### GREENWOOD v. BRACHER.

*(Circuit Court, D. New Jersey. April 20, 1880.)*

PATENT—WANT OF NOVELTY—ESTOPPEL.—The issuing of a patent does not estop the patentee from proving that the invention claimed therein is not novel, in the absence of bad faith in procuring such patent.

SAME—INJUNCTION REFUSED—SECURITY REQUIRED.—In view of the fact that the complainant does not use his patent as a monopoly, but grants licenses to others to use it, and in view of the further fact that there is some doubt on the question of prior use of the alleged improvements, an injunction is withheld in this case, if the defendant will give security for the payment of all the profits he may derive from the use of the invention and for the damages its use may cause the complainant, provided that the patent should be sustained and an accounting ordered.

Motion for preliminary injunction.

*Geo. Harding,* for complainant.

*A. Q. Keasbey,* for defendant.

NIXON, J. This is an application for an injunction, asking the court to restrain the defendant from infringing, *pendente lite,* certain letters patent, numbered 218,220, issued to John Bigelow, August 5, 1879, for improvements in sweat leathers for hats and caps.

The patent is only a few months old, and there has been no adjudication of the question of its validity, but the complainant urges that there has been such a want of good faith in the conduct of the defendant that he is justified, at this stage of the proceedings, in applying to the court for a preliminary interference.

It appears, from the bill of complaint and the accompany-

ing affidavits, that on or about the twenty-ninth of January, 1879, one John Bigelow made application to the commissioner of patents for letters patent for certain improvements in sweat-leathers for hats and caps, and that the patent was refused, because the subject-matter had already been incorporated in two several letters patent granted to Thomas W. Bracher, the defendant in this suit—one dated July 23, 1878, and numbered 206,296, and the other dated December 3, 1878, and numbered 210,489; that afterwards, to-wit, on the eighteenth of February, 1879, the commissioner declared an interference between the parties in order to determine the question of priority of invention,—the subject-matter involved in the interference being the claim of the first recited Bracher patent and the first claim of the Bigelow application, and the claim of the second recited Bracher patent and the second claim of the said Bigelow application,—the claims respectively being identical; that the usual proceedings were had thereon, and after testimony and argument the examiner of interferences rendered his opinion on the sixth of June following, awarding the priority to Bigelow; that no appeal being taken therefrom, letters patent for the invention were issued to Bigelow on the fifth of August, 1879, and numbered 218,220, and that subsequently Bigelow assigned the same to the complainant as trustee of the Blanchard Overseam Machine Company, of Philadelphia.

The bill of complaint alleges that notwithstanding such interference and adjudication of priority of invention to Bigelow, and such conclusion of the right of the parties by the proper officer of the government, the defendant still asserts that his letters patent are valid, as against the complainant, and that he is making, using and vending patented improvements, or sweat-leathers, substantially the same in construction and operation as are mentioned and described in the said letters patent of the complainant.

If the only question in the case was the priority of the invention, as between these parties, I should not hesitate to grant the injunction forthwith to the complainant. The decree of the patent office on the interference doubtless con-

cludes the defendant, as he has not thought proper to appeal from the same, after submitting himself to the jurisdiction. This was not seriously controverted by his counsel at the hearing; but the application was mainly resisted upon the ground that the defendant had discovered that the said improvements were not new either with him or with Bigelow, and that the Bigelow patent, on which this action was founded, as well as his own patent, was void for want of novelty.

A new question is thus presented, and one by no means unimportant: Will the court allow a patentee, who has lost his rights to the protection of the law in consequence of proof that his alleged invention was anticipated by others, to protect himself in the continued use of the patented improvements by showing that neither he nor the other party was the first inventor? In other words, whether the issuing of a patent estops the patentee from proving that the invention claimed therein is not novel. I think the answer depends entirely upon the fact whether the party has acted in good faith in the matter.

Every one making application for letters patent is obliged to file therewith an oath that he believes himself to be the original and first inventor or discoverer of the art, machine, manufacture, composition, or improvement, for which he solicits the patent. Section 4892 of Rev. St. This is often done honestly, and yet untruthfully, owing to the ignorance on the part of the applicant of the state of the art. I can perceive no satisfactory reason why any one should not be permitted, after he has discovered his mistake, to set up the defence of want of novelty against another party, who claims an exclusive right to patented improvements which, in truth, belong to the public. But if one with a knowledge of the state of the arts surreptitiously attempts to appropriate to himself what he knows does not belong to him, he should be estopped, when his fraud is found out, from interposing such a defence, especially against a person whom the patent office has decided, as against his claim, to be the original and first inventor.

My difficulty in this case arises from the grave suspicion,

which the testimony has inspired, that the defendant has been acting in bad faith. There is some reason for believing that, under an assumed name, he obtained from Mr. Bigelow most, if not all, of the essential devices and combinations on which he based his claims in the two patents. Whether this be so or not, it is clear from his own affidavit, read in connection with the evidence of the complainant on this motion, that ever since the decision of the interference case, establishing the invalidity of his patents as against Bigelow, he has held out to the world that his large business in hat sweats was under the protection of these patents.

The witness, G. W. Born, purchased of him in September, 1879, hat sweats, with the concealed stitch, which were marked: "T. W. Bracher; patented July 23 and December 17, 1878; improvements; patent applied for."

His circulars to the trade have been exhibited, in which these patents are recited, and under which he claims exclusive rights and privileges, and guarantees parties manufacturing hat sweats under his licenses against all suits for infringements.

Mr. Van Gelden, also, testifies that he is well acquainted with the defendant Bracher; that he is carrying on business under the firm name of T. W. Bracher Hat Sweat Co., and that he represents to the trade that he is manufacturing hat sweats under the patents of July 23 and December 3, 1878, and is fully protected by them, he being the original inventor of the improvements therein described.

Mr. Gore, of the firm of Gore, Sparron & Co., states that, until quite recently, he purchased all the prepared sweats used by his firm of the licensees of the Bigelow patent, and that he was induced to change and buy the Bracher sweats in consequence of assurances from T. W. Bracher that he was manufacturing the same sweats under his patents of July 23 and December 3, 1878, which protected him and his customers against the owners of the Bigelow patent.

Turning to the affidavit of the defendant, to ascertain what reply he has made to all this proof, we find that he is silent. He does not seem to regard it of sufficient importance to

give it any attention. Under the circumstances it must be regarded as an acknowledgment of its truth; and yet he tells us, in the same deposition, that after he learned that the patent office had declared the interference, and after he had heard the testimony taken therein, he made a thorough inquiry into the validity of both his own and the Bigelow patent, and ascertained that the same device had been used many years ago, and was not novel; that he learned this especially from the affidavits of Job W. Blackham and Henrietta Sanford, which he has put in the case, and which, he says, were taken last spring during the pendency of the interference proceedings.

With such an exhibition of the want of good faith on the part of the defendant in pretending to the possession of exclusive rights under patents which he knew were void, either because they were anticipated by Bigelow or because they were not novel, it has not surprised me that the witness on whom he principally relied (Blackham) has come forward and retracted all the substantial parts of his first affidavit, in which he testified to the prior use of the patented improvements.

Every one having experience in these matters knows how easy it is to exhibit an article of manufacture to an honest and well meaning person, and procure his affidavit that many years before he saw or made something similar to it. The witness may be quite sincere, but altogether mistaken. Some small difference may exist, too apparently insignificant to be carried in the eye or the memory, and yet of such a character as to impart to the article all that is vital or valuable in it. In the present case Blackham swears, in his deposition of May 20, 1879, that from 20 to 23 years ago, while he was foreman in the hat manufactory of I. H. Prentice, of Brooklyn, New York, he "invented and made a certain sweat band or sweat leather, for use in hats, precisely similar in every material part with a sample exhibited," to-wit, one of the Bracher sweats.

And yet, in December following, he had shown to him one of the same Bracher sweats, and then says: "No such sweats

were made by me, or at the factory of Mr. Prentice, during the time I was there prior to 1878; nor were those elements —leather band, spring reed, and attaching slip of oil silk, or other water-proof material—ever combined or used by me, or any one at the factory, as a hat sweat, prior to that time."

It is not necessary for me to indicate now which of these opposite statements I believe; but, in view of the value that both the complainant and defendant attach to the alleged invention, it is quite as probable that the memory of the witness has failed him as to the precise character of the hat sweats made and sold nearly a quarter of a century ago, as that such an important invention should have been abandoned by the world after ˜s many as 70 dozen per day had been manufactured for a period of two or three years.

But it is hardly necessary to pursue the matter further. Enough has been said to indicate the inclination of my mind to grant a preliminary injunction.

But the case is a peculiar one, and I should be sorry to do any injustice to the defendant in consequence of the unfavorable impression which his conduct has made. In view of the fact that the complainant does not use his patent as a monopoly, but grants licenses to others to use it, and in view of the further fact that there is some doubt on the question of prior use of the alleged improvements, the injunction will be withheld, if the defendant will give security for the payment of all the profits he may derive from the use of the invention, and for the damages its use may cause the complainant, provided that the patent shall be sustained and an accounting ordered.

Let an injunction, therefore, issue, unless the defendant, within 10 days after notice of the order, shall give bond, with sufficient security, to be approved by the clerk of the court, conditioned to keep an account of all the hat sweats manufactured and sold, and to file such account under oath, once in three months, in the clerk's office of this court and to pay the amount of any final decree in this case. The penalty of the bond to be $20,000; or, if that sum be regarded as too large or too small, in such other amount as the court shall order after hearing the parties.