TROY LAUNDRY MACHINERY CO., Limited, et al. v. SHARP et al.

(Circuit Court, N. D. New York.　March 2, 1893.)

No. 5,901.

PATENTS FOR INVENTIONS—INFRINGEMENT—DAMPENING MACHINES.

Letters patent No. 401,770, granted April 23, 1889, to Wendell & Wiles for an improvement in dampening machines, were for a machine consisting of rollers each having a nonabsorbent or elastic body or periphery covered by a thin, textile fabric, and arranged "to run in contact" with each other, having adjustable bearings, by means of which they can be moved a limited space apart, in combination with separate water-supply rollers; the object being to dampen articles to be laundered by passing them between the first described rollers, and to moisten their whole surface equally, though they may not be of a uniform thickness, or may have seams or buttons. *Held* that, as the invention is a meritorious one, the claim will not be restricted to rollers actually in contact, especially as such contact is repugnant to the elsewhere expressed purpose of the machine; and the patent is infringed by a device similar in all respects save that these rollers are separated from each other by something less than one sixteenth of an inch.

In Equity.　Bill by the Troy Laundry Machinery Company, Limited, and others against Alonzo Sharp and others to restrain the infringement of a patent.　Decree for complainants.

Statement by COXE, District Judge:

This action, for infringement, is based on letters patent No. 401,770, granted April 23, 1889, to Wendell & Wiles for improvements in dampening machines. The patent is now owned by the complainants. The object of the invention is to provide a machine for dampening articles to be laundered, particularly collars and cuffs, during the process of laundering the same. The specification says:

"One of the requisites of the problem is to secure the uniform application of a limited quantity of water; another, to provide for the passage through the machine of articles having seams, buttons, or other protrusions, and yet to insure a uniformity in the dampening process, especially at and adjacent to said protrusions. It is also requisite that the successful machine should be capable of dampening large quantities of goods in a given time. With these objects in view we have constructed a machine whereby they are attained; and our invention consists in the novel features of construction and arrangement hereinafter described, and particularly pointed out in the claims."

The goods are dampened by being passed between two dampening rollers, which are arranged over and in contact with smaller metal rollers, which revolve in a water trough and supply the dampening rollers with water. The dampening rollers are provided with adjustable bearings so that they can be moved, within a limited space, towards and away from each other and set at any desired distance, depending upon the thickness of the articles to be dampened. The specification says further:

"The dampening rollers are arranged over and in contact with the supply rollers and also in contact with each other in a vertical plane passing between said supply rollers, whereby goods after being dampened fall unassisted into any suitable receptacle under the dampening rollers. Each of the dampening rollers consists in this instance of a shaft, a core of wood, an elastic or yielding nonabsorbing bed or body mounted on the wood, and an outer covering of thin textile fabric. The body of the roller itself may be described as being essentially of any nonabsorbing elastic substance. In this instance rubber is employed, and the purpose of the wooden core is simply to economize in the quantity of rubber necessary in a roller of a desired diameter. The purpose of the thin textile covering is that the water taken up by the rollers shall be limited in quantity, as in dampening starched goods a uniform and

more or less slight moisture only is required. If woolen, felt, cotton, or other fabric of too great thickness were employed as a cover of the nonabsorbing portion of the roller, a sufficient quantity of water would be absorbed (or taken up from the supply roller and conducted to the article being dampened) to more or less effectually wash out, dissolve, or remove the starch therefrom, so that when ironed a defective finish would be the result. By arranging two dampening rollers of the character described to run in contact with each other the elasticity thereof acts during the passage of seams or other protrusions in that each roller conforms to the irregularity of the surface of the article coming in contact therewith. In other words, both surfaces are uniformly moistened, and an excess of protrusions upon one surface of an article is compensated for by the elasticity of the roller in contact with its opposite surface. Separating the water-supply rollers and arranging the line of contact of the dampening rollers between the supply rollers also provides an unobstructed passage for the dampened goods through the machine and into any suitable receptacle placed below the dampening rollers to receive the goods."

The following diagram, in cross section, will sufficiently explain the operation of the machine:

The patentees disclaim dampening rollers having a rubber body or periphery and a cover of woolen or other similar fabric. The claims are as follows:

"In a dampening machine for laundry purposes, a pair of rollers each having a nonabsorbent elastic body or periphery covered by a thin textile fabric and arranged to run in contact with each other, in combination with separated water-supply rollers, substantially as specified. (2) The combination of the rollers $R^1$, $R^2$, each having the rubber body or periphery $b^1$, and thin textile covering $b^2$, and arranged to run in contact with each other, the separated water-supply rollers $W^1$, $W^2$, the troughs $D^1$, connecting troughs $D^2$, supply pipe I, overflow nipple n, and discharge pipe o, substantially as specified. (3) The combination, with the rollers $R^1$, $R^2$, arranged to run in contact with each other, having the nonabsorbent elastic bodies or peripheries $b^1$ and thin textile covering $b^2$, of the adjustable bearings $J^1$, the water-supply rollers $W^1$, $W^2$, the adjustable bearings $J^3$, $J^2$, and the troughs $D^1$, $D^2$, substantially as specified. (4) The combination, with the two dampening rollers $R^1$, $R^2$, each having a rubber body or periphery, $b^1$, and thin textile covering $b^2$, running in contact with each other, of the supply rollers $W^1$, $W^2$, each running in contact with one of the rollers $R^1$, $R^2$, and a suitable framework, substantially as specified."

It was admitted on the argument that in all essential features the defendants' machine is substantially the same as the patented machine. In fact, if

the patent is held to be valid and the claims are construed to cover a machine where the dampening rollers operate in conjunction, but not in actual contact, the defendants concede that they infringe.

The defenses are two: First, that the patented machine, as described and claimed, is inoperative; and, second, that the patent is void for want of novelty and invention. All of the other defenses alleged in the answer are waived.

John H. Peck, (E. B. Stocking, of counsel,) for complainants.
William W. Morrill, (Nelson Davenport, of counsel,) for defendants.

COXE, District Judge, (after stating the facts.) The problem presented to the patentees was how to dampen laundered articles by machinery, preparatory to being ironed, so as to prevent the starch from being washed out and insure uniformity in dampening and rapidity in execution. Prior to the patent attempts to produce these results had ended in incomplete success or in absolute failure. The patentees have produced a successful machine which solves the problem. They are, therefore, entitled to rank as inventors.

All of the elements of the combination were old save one—the dampening rollers covered with a thin textile fabric. The Beach patent, No. 18,032, is, it is thought, the best reference offered by the defendants. It shows rollers arranged in similar juxtaposition to the rollers of the patent in hand, but the Beach mechanism is designed to dampen and cut paper. It would be wholly useless as a machine for dampening collars and cuffs, for the reason, principally, that its rollers are covered with cloth and not by the thin textile fabric of the patent. It was the adoption of this thin fabric which made success out of failure. Other coverings had produced too much or too little water, but this one seems to hit the happy medium. The rollers so covered do the work required with perfect satisfaction fulfilling all the requirements demanded by the launderer's art. The claims contain the expression, regarding the rollers, that they are "arranged to run in contact" and the defendants argue, first, that the patent is inoperative because the machine cannot be run successfully when the rollers are in contact, and, second, that the defendants do not infringe because their rollers are not in absolute contact but are separated by a space which is, probably, less than the sixteenth of an inch. It is thought that the strict construction contended for by the defendants, viz.: that the rollers must be in close junction, actually touching each other, is not required and should not be sustained. The reasons for this opinion may be briefly stated as follows:

First. The patentees having made a meritorious invention, the court should seek to uphold their patent and not to destroy it by illiberal construction.

Second. Nothing in the prior art required that the patentees should restrict themselves to rollers actually touching each other. It can hardly be imagined that they intended to introduce, or supposed that they had introduced, a limitation so opposed to common sense and so unnecessary. Dugan v. Gregg, 48 Fed. Rep. 227.

Third. A careful reading of the specification makes it plain that the patentees did not mean that the rollers should be in actual con-

tact when in operation, but, rather, that they should be run in conjunction with and in juxtaposition to each other.

Fourth. The specification describes adjustable bearings by means of which the rollers may be separated for a short distance, a totally useless function if they were always to touch each other.

Fifth. The specification also refers to the passage through the machine of articles having seams, buttons and protrusions; evidently requiring a wider space than collars and cuffs, which do not have buttons.

Sixth. Again, the operation of the machine is described, which is in direct conflict with the literal meaning of the word "contact," for it is manifest that the rollers cannot run in contact when they are separated by the article which is passing between them.

Seventh. The words "in contact" were not wisely chosen, but when the entire surroundings are considered it is evident that the patentees meant that the words should be construed as synonymous with "in connection." As no one has been or can be misled by this construction there is no reason why it should not be adopted.

Eighth. If the defendants' contention were adopted a machine which was originally arranged with the dampening rollers in contact and, therefore, an unquestioned infringement, would, by reason of the wear incident to the operation of dampening, cease to be an infringement, because the proof shows that the rollers change with use so that parts, at least, are not in contact. It will hardly do to adopt a construction which would absolve a licensee from paying royalties after a month or so of use; a construction which would make the operator of one and the same machine an infringer one day and a legitimate user the next.

Ninth. The equities are with the patentees. They have constructed a valuable and successful machine which performs the work required in a satisfactory manner. They were the first to make a success in this particular branch of industry. The defendants have copied all the essential features of the machine, and no reason is suggested which entitles them to a harsh and narrow construction.

It is thought, therefore, that the patent is valid, that the claims have been infringed by the defendants, and that the complainants are entitled to the usual decree.