LOEWER et al. v. C. P. FORD & CO.

(Circuit Court, N. D. New York.    April 8, 1893.)

No. 6,033.

PATENTS FOR INVENTIONS—NOVELTY—SOLE-CUTTING MACHINES.
    Letters patent No. 407,735, granted July 23, 1889, to Henry Loewer and Barton L. Blair, were for an improved sole-cutting machine, consisting of a stationary frame carrying a rapidly revolving shaft on which are a cutter and a guide wheel, together with a swinging frame, moving to and from the stationary one, carrying a shaft on which are mounted clamps opposite the cutter, for holding the leather blanks, and others opposite the guide wheel, for holding the pattern. In operation, when pattern and blanks are clamped in position, the latter frame is moved forward and its shaft slowly revolved, so that the edges of the blanks come in contact with the cutter, and are pared down to the precise size and shape of the pattern, the edge of which strikes against the guide wheel, and thus limits the depth of the cut. Held, that while the principle is old, having been embodied in a lathe invented by Thomas Blanchard over 70 years ago, the application of it to this purpose, and the construction of the mechanism necessary therefor, involved invention, and the patent is valid.

    In Equity.   Suit by Henry Loewer and George Schelter against C. P. Ford & Co. for the infringement of a patent.  Decree for complainants.

    George B. Selden, for complainants.
    E. E. Wood, for defendant.

    COXE, District Judge.    This is an infringement suit founded upon letters patent No. 407,735, granted, July 23, 1889, to Henry Loewer and Barton L. Blair, for an improved sole-cutting machine. The patent is now owned by the complainants.  The object of the inventors was to construct a machine which should cut from leather blanks one sole, or several soles, to the exact size and shape desired.  This is accomplished by means of a stationary frame provided with a rapidly revolving shaft which carries a cutter and a guide wheel.  A second swinging frame, which moves to and from the stationary frame, is provided with clamps, opposite the cutter, for holding the leather blanks, and other clamps opposite the guide

wheel, for holding the pattern. These clamps are mounted on a shaft. When the blanks and pattern are clamped in position the second frame is moved forward and, as its shaft is slowly revolved, the edges of the blanks come in contact with the cutter and are pared down to the precise size and shape of the pattern, the edge of which strikes against the guide wheel, thus limiting the depth of the cut. The claims involved are as follows:

"(1) In a sole-cutting machine, the combination, with the revolving cutter C and its shaft, of the revolving sole clamps E E', their supporting shafts, the movable carriage, and a revolving form operating to vary the relative positions of the cutter and the sole clamps, substantially as described."

"(4) In a sole-cutting machine, the combination, with the revolving cutter C and its shaft, and guide s, of the revolving sole clamps E E', clamp plates z z', removable form F, and suitable supporting shafts, substantially as described.

"(5) In a sole-cutting machine, the combination, with the revolving cutter C and its shaft, and guide s, of the revolving and traveling sole clamps E E', form F, suitable supporting shafts, and movable blank guide T, substantially as described.

"(6) In a sole-cutting machine, the combination, with the revolving cutter C and its shaft, and guide s, of the revolving and traveling sole clamps E E', suitable supporting shafts, and movable blank guide T, provided with adjustable plate y', substantially as described."

"(9) In a sole cutting machine, the combination, with the main frame A A', supporting the revolving cutter C and its shaft, and the guide s, of the movable frame D, carrying the revolving sole clamps E E' and form F, and mechanism adapted to secure the simultaneous revolution of the sole clamps and the form, substantially as described."

"(14) In a sole-cutting machine, the combination, with the revolving cutter C and its shaft, provided with the spring guard S, of the guide s, and the revolving sole clamps E E', form F, and the suitable supporting shafts, substantially as described."

The defendant, a corporation engaged in manufacturing shoes at Rochester, N. Y., uses a machine covered by letters patent No. 472,399, granted to Simon Ross, Jr., April 5, 1892. It is alleged that this machine infringes the above-named claims of the complainants' patent. The defenses are lack of novelty and invention and noninfringement.

The patent was granted without reference. The principle underlying the invention is unquestionably old. Over 70 years ago Thomas Blanchard invented an automatic lathe by which irregular forms were turned by means of a revolving cutter and guide wheel mounted on a stationary frame, the stock and pattern, opposite the cutter and guide wheel, being mounted on a swinging frame. In 1884 David F. Hartford patented (No. 309,850) an ingenious machine in which the leather blank was clamped to the pattern and cut to the desired shape by a knife which traveled around the pattern. Besides these the records show many machines for cutting and trimming the heels, and channeling and grooving the soles, of boots and shoes, and many improvements in lathes for turning lasts and other irregular forms. It is unnecessary to discuss the various exhibits in detail, for neither alone nor aggregated do they show the combinations of the claims. An army of ingenious mechanics and inventors had the Blanchard lathe before them for over half a century, yet the idea of utilizing it in the sole-rounding industry

never seems to have occurred to one of them. It did not occur to men of undoubted ingenuity, like Stevens, Hartford, Helms, King, and Joyce, to round the soles of shoes to the desired shape by a rotary cutter and guide wheel on a stationary frame and revolving clamps for holding the pattern and blanks on a movable coacting frame.

That the patented machine is a valuable contribution to the art cannot be doubted. It does the work better and faster than the best of the prior machines. It is stated in the record that the daily capacity of the Hartford machine is from 600 to 800 pairs of outsoles per day, while that of the patented machine is from 4,000 to 6,000 per day. To construct such a machine required invention. The arrangement of its complicated and ingenious mechanism is not the work of mechanical skill alone. The fact that during the many years of fierce competition in this art the idea never occurred to any of the men of genius who were striving to improve all kinds of labor-saving devices in the shoe industry, creates a strong presumption that it was not the kind of a contribution to be expected from one who is a mechanic and nothing more. Although the complainants have not made a pioneer invention, in the broad sense of that term, they are entitled to a construction liberal enough to cover a machine, which, in the same art, performs the same work in manner almost identical. There are differences between the complainants' and the defendant's machines, but they are of form and relate only to minor details. The defendant's machine may be in some particulars an improvement, but that it has adopted all the essential features of the patented machine there can be no doubt.

The complainants are entitled to the usual decree.