' BALLARD v. McCLUSKEY.

(Circuit Court, S. D. New York. December 14, 1893.)

1. PATENTS—INVENTION.
Patentable invention is shown when the combination is new, and produces a machine which does more and better work than those which preceded it.

2. SAME—BOX MACHINES—EJECTORS.
Invention is shown in substituting, for the old rubber ejectors in the blank or pattern cutting roll of a box machine, sectional ejector plates which are actuated by springs, have a central support and rocking motion, and are more easily adjustable, more durable, and superior in operation to the old.

3. SAME—INFRINGEMENT.
A claim, in a box-machine patent, for "the scoring roll, S, and the pattern cutting roll, C, the former having a continuous series of scoring knives, and the latter a corresponding series of pattern knives arranged upon their peripheries," is infringed by a machine in which the scoring roll is but one-third the size of that of the patent, and has but one series of knives instead of three, but which is made to revolve three times as fast, thus equalizing the difference in dimensions.

4. SAME—EVIDENCE—WITNESS.
A court of equity should scrutinize with great care the statements of a patentee who, having taken the oath that he believed himself to be the first inventor, as required by Rev. St. § 4892, gives testimony inevitably tending to prove that such oath was false.

5. SAME—PARTICULAR PATENT.
In the Titus patent, No. 272,354, for improvements in machines for cutting box patterns, the first claim held to be too broad, and a disclaimer required; the other three claims held valid, and infringed by defendant.

In Equity. Bill by Charles W. Ballard against James J. McCluskey for infringement of a patent. Decree for complainant.

For prior report, see 52 Fed. 677.

Walter D. Edmonds, for complainant.

James P. Foster, for defendant.

COXE, District Judge. This is an equity suit for infringement, founded upon letters patent No. 272,354, granted to James M. Titus, February 13, 1883, for improvements in machines for cutting box patterns. The patent is now owned by the complainant. The invention relates to machines for cutting box patterns from continuous sheets of veneer which are first scored according to the desired pattern and are then passed under a cutting roll which cuts a series of patterns from the scored sheets and automatically removes them by means of ejectors. Although the scoring of the sheets and the cutting of the patterns may be effected in separate machines the inventor's method is to feed the scored sheets to the cutting roll directly they leave the scoring roll. In this way he saves time and labor and avoids the difficulty of causing the scored

sheets to register properly with the pattern cutters. The machine of the patent consists of three rolls, a bearing roll, a scoring roll and a cutting roll, the latter two being mounted in adjustable bearings and geared with the bearing roll which carries the driving-belt pulley. The scoring and cutting rolls may be changed according to the desired pattern. To prevent the pattern from sticking in the recesses formed by the projecting cutting edges, ejectors are provided consisting of plates actuated by coiled springs, or by any other means, and held within the recesses by headed guide pins. The operation of the machine is thus described:

"The bearing roll B being rotated through the medium of its belt pulley B' from any suitable prime motor or by means of a crank and hand power, the other rolls are rotated, a sheet of veneer is fed between the bearing roll B and the scoring roll S, that forms the scores of the patterns, and the scored sheet passes from the latter roll directly under the cutting roll C, that cuts out the patterns from the scored sheet, which, as fast as cut, are automatically ejected from the cutting devices by the followers or ejectors E, and from which patterns the boxes are then made, as hereinbefore described. The machine as constructed may be employed for cutting patterns or blanks from pasteboard, cardboard, or analogous material with equally good results."

The result is the production of a blank which can be readily bent into a completed "butter dish."

The claims are as follows:

"(1) In a machine for scoring and cutting out patterns for boxes or dishes from veneer or analogous material, the combination, with a scoring roll and a cutting roll of a single bearing roll, operating to feed the material first to the scoring roll and then to the cutting roll, as described, for the purpose specified.

"(2) In a machine of the class described, the combination, with a pattern-cutting roll having a continuous series of knives arranged upon its periphery to cut two or more patterns successively, of a corresponding series of spring-actuated ejector plates, arranged in sections, two or more for each pattern, said sections having the form, or nearly so, of the pattern cut, substantially as and for the purpose specified.

"(3) In a machine of the class described, the combination, with a scoring roll having a continuous series of knives arranged upon its periphery to score a given pattern, of a cutting roll having a corresponding series of cutters and spring-actuated ejectors, both having the form of the pattern, and a feed and pressure roll, operating to feed the veneer or analogous material directly from the scoring to the cutting roll, whereby the patterns are scored, cut, and ejected from the cutters in continuity, substantially as and for the purpose specified.

"(4) The combination, with the scoring roll S and the pattern-cutting roll C, the former having a continuous series of scoring knives and the latter a corresponding series of pattern knives arranged upon their peripheries, as described, of the bearing roll B, operating to feed a continuous sheet of veneer or analogous material first to the scoring roll and then to the pattern-cutting roll, substantially as and for the purposes specified."

The defenses are invalidity of title, anticipation, lack of invention and noninfringement. That the complainant's machine is an improvement over all similar machines which preceded it cannot very well be disputed. It is more easy of manipulation, more accurate in adjustment and operation and more economical in result. Upon the evidence here presented it is able to do more work than any other machine and has practically taken possession of the market. It is, of course, true that many elements of the claims considered

separately were old and several of them had previously been combined in similar machines. This is true in almost every instance where combinations are under consideration. It cannot be questioned that Titus was the first to construct the machine of the patent. His combination was new, and, though it may not produce a new result, it certainly produces an old result in a better way. It is not thought necessary to enter upon a discussion of the question how far invention lies in the various elements which make up the combination. An inventor should not be so treated. It is unfair. The combination should be considered in its entirety. If the machine is new and does better work than the machines which preceded it a strong presumption of patentability is presented. This machine consists of a scoring roll, a cutting roll and a bearing roll geared together, the cutting roll being provided with spring ejector plates arranged in sections so that the veneer is raised, without injury, from the knives. The three rolls synchronize perfectly in operation and preserve exact coincidence between the score and the cut, the result being that the machine produces more blanks and better blanks than any other. This is enough. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825; Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. 598; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719; American Cable Ry. Co. v. City of New York, 56 Fed. 149; Loewer v. C. P. Ford & Co., 55 Fed. 62. So much for the combination.

Regarding the ejector plates, considered apart from the main combination and as covered by the second claim, there is, it is thought, little difficulty in establishing patentability. It is said truly that rubber ejectors were old and that rubber in many instances is an equivalent for a spring. It is argued, therefore, that there was no invention in substituting the spring ejector for the rubber ejector. It is not always fair to test a patent by a hard and fast rule like this. The improvement of Titus was not merely the substitution of one equivalent for another. The new ejectors are in every way superior to the old. They last longer, they are more easily adjusted and they do much better work. A skilled mechanic would hardly have hit upon the ingenious idea of making the plates sectional, giving them a central support and imparting to them the rocking or tilting movement so beneficial in operation. Surely there was here as much of the inventive faculty as was displayed in putting an elastic rubber back into the rubber packing of stuffing boxes, (Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71,) or as was shown in the substitution of vulcanite for gold as a base for artificial teeth, (Smith v. Vulcanite Co., 93 U. S. 486.)

The patent is not anticipated by the Indianapolis machines. Imprimis, the principal testimony comes from a somewhat discredited source—James M. Titus, the inventor. To say the least a court of equity should scrutinize with great care the statements of one who, having taken the oath required by section 4892, Rev. St., gives testimony the unavoidable effect of which is to prove that such oath was false. Even in the case cited in support of this testimony (Greenwood v. Bracher, 1 Fed. 856) the court, in answer to the ques-

tion whether a patentee is estopped from proving that the invention is not novel, said: "I think the answer depends entirely upon the fact whether the party has acted in good faith in the matter." If, however, this testimony came from a perfectly reliable source, it would hardly be sufficient to anticipate any of the claims. It is vague and uncertain. A person skilled in the art would have difficulty in constructing a machine from the description given. None of the machines were produced. Some of them were burned up and sold for old iron. Others did not work satisfactorily and were abandoned. They were all machines for making the staple-bound dish and no other. The rolls were not geared together, the scoring roll was made to turn by the veneer passing through and none of the machines were provided with spring ejector plates.

It is unnecessary to enter upon a discussion of the Lang, Baldwin, Jaeger, Percival, Fry and Waste patents further than to say that they have all been examined and no anticipation found. It is plain that the Percival ejectors operate upon a very different principle from the Titus ejectors.

As to infringement. There seems to be no dispute that the defendant, at Frankford, Del., operated several machines precisely similar to the patented machine, except that the scoring roll was one third the size of the patented roll and scored but one blank at each revolution; but as it was made to turn three times as fast the difference in dimension was equalized. Instead of using three series of knives the defendant uses one series three times. The function is the same. The result is the same. It is probable that when the patentee prepared his specification and used the words "a continuous series of knives" he did not have in mind the small scoring roll of the infringing machine, but it is plain what he meant. He intended that the scoring roll should be provided with knives which should feed a series of scores to the corresponding series of cutting knives on the cutting roll. There was nothing in the art requiring him to limit the patent to a scoring roll of the exact size of the cutting roll and a construction so limiting it would be harsh and illiberal. The court should not seek to destroy a patent by construction, but, rather, to uphold it. Machinery Co. v. Sharp, 54 Fed. 712. The patent describes a valuable combination to which the owner of the patent is entitled, even though the patentee may have attempted to claim too much and may have used loose and inartistic language in description and claims.

The complainant insists that all of the claims are infringed, and as the defendant attacks each claim separately it is necessary to examine them with some care. The complainant's expert witness says:

"The fourth claim of the patent is substantially similar to the first, with the simple exception that the scoring-roll element, the pattern cutting roll element, and the bearing roll are lettered to correspond with the lettering of the drawings of the patent for similar parts."

If this be so, and I think it is, it is plain that here are two claims for the same combination. The first claim must be limited to the elements described as the distinguishing features of the patented

machine.· If broadly construed to cover three rolls geared together it is void in view of the Baldwin and other patents. If limited to cover only the improvements of Titus it is the same as the fourth claim. The first claim is too broad, and, under the arbitrary and, to my mind, unjust rule which obtains in this circuit, must be disclaimed. The fourth claim is clearly infringed, but it also may be too broad. In view, however, of the rule referred to, the doubt, if there be one, should be resolved in favor of the patent. No possible injury can result to the defendant from a decision which permits the appellate court to pass upon this question. The other claims are clearly restricted to the precise advancement made by Titus and are infringed. It is thought that a sufficient prima facie title has been established and that the action is maintainable in the southern district of New York.

It follows that, on filing a disclaimer of the first claim, the complainant is entitled to the usual decree upon the other claims, but without costs.