CONSOLIDATED FASTENER CO. v. COLUMBIAN FASTENER CO. et al.

(Circuit Court, N. D. New York.   April 13, 1897.)

**1. PATENTS—CONSTRUCTION OF CLAIMS.**
Where two interpretations of the language used in a patent are possible, that one should be chosen which upholds and v. alizes the patent, especially when the court is convinced that the patentee has made a valuable invention.

**2. SAME.**
Where an invention is valuable, and the claims are clear, the patent should not be overthrown because of a presumption based upon the tentative debates, as shown by the file wrapper, between the patentee's attorneys and the patent-office examiners.

**3. SAME—IMPROVEMENTS IN BUTTONS.**
The Raymond patent, No. 405,179, for an improvement in buttons, which covers, in claims 1 and 3, a spring stud having three elements,—a compressed dome, an engaging spring, and an eyelet,—construed, and *held* not anticipated, valid, and infringed.

The patent was before the court on a motion for a preliminary injunction. 73 Fed. 828. The question of jurisdiction then decided is not again argued. The claims involved are there set out. There is also a quotation from the specification. These need not be repeated.

John R. Bennett and W. B. H. Dowse, for complainant.
William A. Jenner, for defendants.

COXE, District Judge. Is the Raymond patent void for lack of invention? Is it infringed? These are the two questions to be answered. The claims in controversy, the first and third, relate to a spring stud intended to be used as one member of a snap fastener, the other member being a receiving socket, with which the spring stud engages. The patentee describes in the specification the fastening devices in two prior patents granted to him and points out the objections to them. To obviate these difficulties he produced the construction in controversy. The stud of the patent is composed of three parts. First, a depressed dome which forms a fundamental supporting part so rigid as to admit of an eyelet being riveted over against it. Second, an eyelet having a wide flange and a shank small enough to be inserted from beneath the fabric up into the dome-piece where it meets the depending convexity on the lower side of the dome and is thereby riveted over so that it cannot be withdrawn. Third, the spring cap thus held firmly in position upon the fabric. The combinations of the claims, so far as they relate to the spring stud, contain these three elements—the dome, the engaging spring and the eyelet. The third claim differs from the first in requiring that the flange of the dome shall extend beyond the spring, and does not include the socket as a member of the combination. The valuable feature of this stud is passing the eyelet through the underside of the fabric into the depressed dome where it is upset and securely riveted, the fabric being held firmly between the flanges of the eyelet and dome. This form of riveting upon the upper side of the fabric seems to be new

with Raymond. That it is simple, durable, strong, inexpensive and popular is abundantly proved by the record. The promoters of the defendant company recognized the value of the stud and the validity of the patent by buying the patented studs. They continue to assert the value of the principle which underlies the patent by making and using a stud which unquestionably contains the feature of locking the parts together above the fabric by upsetting the eyelet by the depression inside the dome. A stud constructed in this way remains fastened to the fabric. The studs of the prior art pulled through the fabric. This one does not. One of the witnesses says that it is "universally adopted, in all foreign countries as well as the United States." Though this may perhaps be a somewhat optimistic view of the situation, there can be no doubt that the patented fastener has been adopted by a large number of trades having occasion to use buttons; that the yearly sales have been enormous and that they are constantly increasing. The patent has been respected by the trade, acquiescence being substantially unbroken and complete. The defendants' brief states their position as follows:

"The defendants severally defend against the bill on the ground that they have not infringed; that if the patent is construed so as to cover defendant company's device, it is invalid and void for want of novelty; that the patent is void because the claimed invention thereof is a mere aggregation of elements separately old and well-known in the art and having no new unitary or co-operating result, and the individual defendant, Mr. Lucius N. Littauer, by his separate answer denies participation in the alleged infringing acts. The principal question to be discussed and decided is, whether the defendants' device infringes when the patent is construed in such manner as, in view of the state of the art, to maintain its validity."

The court understands this to mean, that if the claims do not cover an aggregation, they may, if strictly construed, be upheld as covering a meritorious invention, but if given a construction broad enough to include defendants' button, they are anticipated and rendered void by the structures of the prior art. There can be no doubt that the claims are for combinations. The combination of the first claim consists of a receiving socket attached to one part of a fabric and a spring stud attached to the opposite part, the stud being composed of the elements above stated. The socket and the stud, when united, form a complete clasp or fastener. Each of these parts is dependent upon all the others. Remove one and the device is useless. If the result be limited to the buttoning together of two opposite parts of a fabric, then no new result is produced, but, even with this narrow construction, the old result is unquestionably produced in a better way and by the co-operative action of parts never assembled before. It matters not that the stud is on one part of the fabric and the socket on another; the combination is formed when the two are united and form the completed fastener. Buttons of this general class were old, but they were all made up of parts which formed a combination, not an aggregation. Raymond's combination was new, because he introduced into his stud parts which combined to attach the stud to the fabric in a novel way and in a better way than anything which

preceded it. There is no distinction between the first and third claim so far as the question of aggregation is concerned. It is thought that these views are sustained by the following authorities: Heating Co. v. Burtis, 121 U. S. 286, 7 Sup. Ct. 1034; Pickering v. McCullough, 104 U. S. 310; Packing Co. Cases, 105 U. S. 566; Beecher Manuf'g Co. v. Atwater Manuf'g Co., 114 U. S. 523, 5 Sup. Ct. 1007; Clough v. Barker, 106 U. S. 166, 1 Sup. Ct. 188; Lake Shore & M. S. Ry. Co. v. National Car Brake Shoe Co., 110 U. S. 229, 4 Sup. Ct. 33; Fountain Co. v. Green, 75 Fed. 680; Forbush v. Cook, 2 Fish. Pat. Cas. 668, Fed. Cas. No. 4,931; Ballard v. Mc-Cluskey, 58 Fed. 880; Walk. Pat. §§ 32, 33.

The defendants' main effort is to obtain a construction of the claims so narrow as to enable them to escape the charge of infringement. The drawings show a stud with an unusually, and, apparently, an unnecessarily long neck, the outside of the dome and the inside of the radial spring fingers being in contact. It is argued that because the description and claims refer to the dome as a supporting part, a stud which does not have the supporting feature alluded to, namely, the sides of the spring cap supported by the sides of the dome, does not infringe. The issue upon this branch of the case cannot be more clearly and fairly stated, than in the brief of the defendants, as follows:

"As already stated, two views are taken of the interior dome piece, viz.: (1) The dome piece holds the spring cap (by means of the clamping ring) for attachment to the fabric, and at the same time affords an anvil surface for clinching the attaching eyelet. That is the view taken by complainant, and (2) The dome piece not only acts as stated in (1), but it also serves to support the radial spring arms against collapse by virtue of the side contact of the radial spring arms with the vertical walls of the dome piece. This is the view taken by defendant."

That the patent is susceptible of the latter construction must be admitted. Many plausible reasons can be advanced to sustain such a construction. On the other hand, an equally cogent argument can be advanced, in favor of the former construction. Confining the discussion to the language of the patent, it is manifest that where two interpretations are possible, that one should be chosen which upholds the patent. If the defendants' contention be upheld, the patent ceases to be a protection. The essential feature is strangled by a useless and nonessential feature. The side support by the dome of the vertical walls of the cap is wholly useless in the short-necked commercial fastener. It would be difficult to construct such a stud having this support. The claims might as well be held void in limine as to be construed so that it requires almost an exercise of the inventive faculty to construct a commercial device that will infringe. The language of the specification relating to this subject is as follows:

"The dome forms a fundamental supporting part so rigid as to admit of an eyelet being riveted over against it and affording a seat for the external spring by which the stud is made to engage with the embracing button or socket."

This does not refer—surely it does not necessarily refer—to a side-supporting function of the dome. The spring is seated on the dome, the latter furnishes a foundation or support for the former

and sustains it when attached to the fabric, but it is by no means necessary that it should furnish the side support referred to. There is nothing in the specification which compels this restricted meaning of the words "support" and "supporting," and, but for the vertical contact shown in the drawings, in all probability it would not have been thought of. There is considerable plausibility in the theory that this was a mistake of the draftsman, for it appears that the sample stud from which the drawings were made, had no lateral support and that none has ever been made since, having this feature. The new mode of fastening above described is the essence and gist of the invention. It is perfectly obvious that this is what Raymond intended to cover by the claims in question. No one can be deceived or misled upon this point. Where the court is convinced that the patentee has made a valuable invention, it should extend scant sympathy to interpretations, however plausible, which deprive him of the fruits of his ingenuity. It is not material that he has employed equivocal words and indeterminate expressions if the invention be described with reasonable certainty. If the claims are susceptible of two interpretations that one should be chosen which upholds and vitalizes the patent. Ingels v. Mast, 6 Fish. Pat. Cas. 415, Fed. Cas. No. 7,033; Machinery Co. v. Sharp, 54 Fed. 712. It is hardly necessary to invoke this rule in the present instance, for the reason that the specification is not ambiguous. Read as a whole it points to the conclusion that the patentee intended to use the word "support" in the sense of a foundation rather than a buttress. These considerations dispose of what is said of the file wrapper.

There is not in the file any direct allusion to lateral support furnished by the vertical wall of the dome, but it is said, that if the proceedings are considered as a whole, this function must be inferred. It is not necessary to decide whether this be so or not. Where an invention is valuable and the claims are clear, the patent should not be overthrown because of a presumption based upon the tentative debates between urgent and vociferous attorneys and reluctant and laconic examiners. Vulcanite Co. v. Davis, 102 U. S. 222; Sugar Apparatus Manuf'g Co. v. Yaryan Manuf'g Co., 43 Fed. 140.

But it is argued further that the state of the art compels a narrow construction. This inquiry will be confined within exceedingly narrow limits if the novel feature of the patent be kept in mind. If the fastening mechanism is not novel the patent falls, if it be novel the patent must be sustained for this feature, without reference to the antiquity of the other features, which are not involved. That each of the separate elements of the combination was old, is of course, of no importance. This is usually true in claims for combinations. A patent is never defeated for this reason. Bates v. Coe, 98 U. S. 31, 48; Cantrell v. Wallick, 117 U. S. 689, 694, 6 Sup. Ct. 970; Kent v. Simons, 39 Fed. 606. The question is not whether the elements were known before, but, were they combined before? These considerations eliminate a number of prior patents. It is freely admitted that, considered broadly, each of the elements of

the combinations was known to the prior art.    That is, three-part studs were known; so were spring caps, domes, eyelets and receiving sockets.    But nowhere, even as a separate element, does a depressed dome appear, and nowhere is there a combination where the dome is used as a clinching anvil to fasten the three parts to the fabric.    The proof adds little to the statements of the patent itself.    The nearest approach to the invention is found in the two prior patents to the inventor.    The present button is intended as an improvement upon Raymond's 1886 and 1887 buttons, and to remedy the defects found to exist therein.    This is plainly stated in the specification.    Domes are shown in these earlier buttons, it is true, but they are not the depressed dome of the patent, and are introduced for a wholly different purpose.    They do not operate in any degree to attach the spring to the fabric.    Similarity ends with the name.

Considerable attention was given at the argument and in the brief of defendants, to the English patent to Huddart, No. 1,898, sealed January 24, 1895.    The improvement there described relates to ordinary buttons intended to co-operate with ordinary buttonholes.    The object is to insure the expansion of the shank under moderate pressure so that the button will be securely attached to the fabric in such a manner that the tendency to tear will be avoided.    The Huddart button is provided with a disk of soft metal having a countersunk hole.    A hole is made in the fabric through which the pin of a stud, hollow at the end, is passed into the countersunk hole on the underside of the button.    Pressure is then applied, and the end of the pin is spread by the flaring surface which it encounters and thus rivets the two parts together.    Pressure is substituted for sewing as a means of attaching buttons to garments. Instead of being sewed on they are riveted on by expanding the end of a rivet in a countersunk hole in the button head.    It is argued that Huddart's interior disk might be used in connection with his eyelet, or pin, to support a spring cap and attach it to the fabric, which would be a double use merely, not involving invention.    The argument in support of this theory is one of unusual ability, but, after giving it the most careful consideration, the court has reached the conclusion that invention is not negatived by the Huddart patent.    It is thought that the skilled workman, with the Huddart cloth button before him, would not have produced the Raymond fastener.    He might have produced the construction shown in the defendants' illustrative drawing where a spring cap is raised upon the Huddart disk.    It requires no expert learning to perceive that such a device would be useless as one member of a spring fastener.    The outer periphery of the disk does not contact at all with the fabric, and the flange of the rivet is so narrow that in all probability the stud would tip and wabble in every direction, if, indeed, it did not tear out after a few attempts to use it.    The device seems to be inoperative for all practical and commercial purposes.    It would operate in all respects as if a spring cap were mounted on an ordinary button which is attached to the fabric by needle and thread.    To overcome all the difficulties suggested

by such a clumsy and inconvenient structure and produce the perfect stud of the patent required something more than mechanical skill. The Huddart patent and the prior Raymond patents are unquestionably the best references, and render it unnecessary to consider the other patents offered by the defendants. They add nothing to the discussion. They show nothing which is not shown in the three patents referred to. If these do not anticipate or fatally narrow the claims, the others do not; whether considered singly or together. It is perfectly apparent that the combination of the patent is nowhere found in the prior art, and it is thought that to produce this combination required a use of the inventive faculties. It is not a great invention, but it is much more important than many which have been sustained by the courts. Having in mind the conceded novelty of the complainant's stud, its simplicity and durability, the tribute paid to it by the entire art, including the defendants, the enormous sales and the uniform acquiescence of the public, it is plain that it is the duty of the court to sustain the patent, and that every reasonable doubt should be resolved in its favor. Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71; Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719; The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450; Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194; Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299; Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. 598; Rose v. Hirsh, 23 C. C. A. 246, 77 Fed. 469; Kent v. Simons, supra; Maitland v. Archer & Pancoast Co., 72 Fed. 660.

The question of infringement remains to be considered. Two forms of alleged infringing buttons have been introduced. The first form was made and sold before the bill was filed. It was made in substantial compliance with the patent granted to W. B. Murphy, No. 545,906, September 10, 1895. Some time after the filing of the bill the first form was discontinued, and the second, or "hat" form, was substituted. The second form is not within the issues presented by the pleadings, and, for reasons which it is unnecessary to enlarge upon at this time, it is thought that the decision should be confined to the questions actually involved. Cleveland Faucet Co. v. Syracuse Faucet Co., 77 Fed. 210. The first form of stud will therefore be the only one considered. The function of lateral support being removed from the claims, there can be little doubt of infringement. The defendants' stud is composed of three parts,—the spring cap, the dome and the eyelet. The flange of the dome furnishes a seat for the spring, and the eyelet, entering from below the fabric, passes up into the dome where it meets the annular depression and is riveted over against it. The parts are held together precisely as are the parts of the complainant's stud. In function, the two are identical. In form, there is a slight difference in the shape of the domes. The central part of defendants' dome is punched out, and it is so constructed that the edge of the eyelet instead of being flared outwardly is compressed and turned inwardly. These differences do not go to the heart of the invention and are wholly immaterial.

The bill describes the defendant Lucius N. Littauer as a director and the treasurer of the defendant company. The court is unable to find any legal proof that Mr. Littauer was connected in any way with the infringement proved. As to him the bill must be dismissed. Howard v. Plow Works, 35 Fed. 743; Boston Woven-Hose Co. v. Star Rubber Co., 40 Fed. 167.

It follows that the complainant is entitled to the usual decree against the defendant, the Columbian Fastener Company.