### R. BLACKINGTON & CO. v. ADELS.

(District Court, S. D. New York. August 12, 1921.)

1. Patents ⬅328—Reissue 14,316, for a belt buckle, valid and infringed.

The Ballou reissue patent, No. 14,316, for a belt buckle, while the elements are old, is for a true combination which has utility and discloses invention. Claims 1, 3, and 4 *held* valid and infringed, and claim 2 invalid.

2. Patents ⬅112(3)—Deliberate decision of Patent Office entitled to weight.

The action of the Patent Office in granting a patent for a combination, after considering objections of anticipation and aggregation, while not controlling, is entitled to weight, when the same defenses are presented to a court in an infringement suit.

In Equity. Suit by R. Blackington & Co. against Moses Adels, trading as M. Adels & Co. Decree for complainant.

Otto Munk, of New York City (George N. Goddard, of Boston, Mass., of counsel), for plaintiff.

William B. Whitney, of New York City, for defendant.

KNOX, District Judge. Plaintiff is the assignee of reissue letters patent No. 14,316, granted June 19, 1917, for a belt buckle, and claimed to have been invented by Walter B. Ballou. The original patent was applied for December 17, 1915, was granted May 16, 1916, and surrendered December 7, 1916.

[1] According to the specifications of the reissue patent, the following are the objects sought to be served by the invention claimed:

"To provide a buckle of simple and efficient construction, in which the strap engaging and holding devices may be conveniently and readily assembled after the buckle plate or single piece body has been fully polished, without marring its surface or finish.

"To provide such an arrangement and construction of parts as will be convenient to permit the raising or piercing of the front plate, comprising the

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

body of the buckle, for monograms or other fanciful designs, the gripping roller being constructed so as to be capable of insertion and removal at will."

To provide for "facilitating the ready insertion and securing of the fixed or anchored ends of the strap or plate, while also making it adaptable to straps of different thicknesses, whereby the front plate or body always lies snugly · against the strap, whether the strap be relatively thick or thin."

The means utilized in accomplishing such objects are:

(1) A single piece body, consisting of a front plate with integral side flanges, but with no back.

(2) A gripping roller, which is hollow and which is mounted, .at one end of the buckle, to travel in oppositely disposed inclined slots formed in the side flanges by means of headed pins having tapered ends, which are passed through the slots and driven into the ends of the roller; and

(3) A bail with cranked ends, which, at the other end of the buckle, is mounted in the side flanges by passing its ends through oppositely disposed bearing openings in the flanges, and then heading these ends outside.

Whereupon the patent's claims read:

"1. In a belt buckle, a body having side flanges provided with inclined slots and with openings, a bail having cranked ends passed through the openings and subsequently headed, and a hollow roller having tapered headed pins driven thereinto through the slots.

"2. In a belt buckle, a body having flanges with inclined slots, a roller between the flanges, and pins driven into the ends of the roller so as to permit removal of the same, the pins extending through the slots.

"3. A belt buckle embracing a body portion consisting of a front plate whose sides are inturned to form integral flanges, said flanges being provided with opposed oblique slots, a clamping roller journaled to travel in said slots to clamp the free end of the strap against the inside face of the front plate, said flanges being also provided with opposed bearing openings, and a bail pivotally mounted in said bearing openings and serving as an automatically adjustable anchorage for the fixed end of the strap, substantially as described.

"4. A belt buckle embracing a body portion comprising a front plate whose sides are inturned to form parallel integral flanges, said flanges being provided with opposed slots extending obliquely to the front plate, a clamping member adapted to travel in said diagonal slots to gradually approach the front plate and clamp the free end of the strap against the inside face thereof, a cranked bail member pivotally supported in said flanges near their ends, whereby the swinging movement of the bail tends to maintain the adjacent end of the buckle in close contact with the strap, substantially as described."

If the patent be valid, there is no question of infringement by defendant, for while, in the belt buckle complained of by plaintiff, there are some structural differences, each of them may be said to be the mechanical equivalent of the features involved in the patent in suit. Several defenses are set up in the answer to the complaint, but the one chiefly relied upon is that—

"The improvement in belt buckles claimed and described in the original letters patent and the reissue thereof were without patentable novelty and were lacking in invention in view of the prior art."

In support of this defense prior patents, showing a clamping roller, are set up. Herkimer, 279,385 (buckle for tracts and other harness straps); Sanders, 1,054,449 (a belt buckle). As showing buckles of a single piece body, the patents to Greenfeld, 1,051,731, Molloy, 1,060,-351, and Rumble, 1,099,886 (all belt buckles), are cited; and as disclosing the method of mounting Ballou's gripping roller reference is

made to the Herkimer, supra, and the English patent 970,201 for a time stamp; while the pivotally mounted bail of Ballou is said to have been anticipated in Herkimer, supra, Beach, 289,375, Anderson, supra, Rumble, supra, Gathright, 112,800, and Fishel, 941,702. Furthermore, it is said that the buckle made by J. K. Osborn Manufacturing Company, of Harrison, N. J., in 1913, discloses Ballou's clamping roller device, and that the so-called Morse or Finberg buckle constitutes a complete anticipation of the Ballou buckle.

By reason of such of the examples of the art here involved and those allied with it, and excluding for the moment the Morse or Finberg buckle, I venture the opinion that each of the features of the Ballou buckle is old, and that, if the validity of the patent in suit is to be sustained, it must be by virtue of the fact that Ballou has brought about such a combination of old elements as will overcome the charge of aggregation, and amount to patentable novelty. It is also pertinent to inquire if Ballou's achievement is the result of anything more than mechanical skill.

The buckle in question, in the trade wherein it finds its market, would probably be described as a novelty. By such statement I do not mean to indicate that such designation is any proof of invention. What I do mean, however, is this: That there has been, and is, an unquestioned, and, I take it, somewhat discriminating, demand among the wearers of belts for a departure from the old-fashioned tongue type of buckle. The requisites of such new and more or less "fancy" type of buckles, it may be conceded, upon the part of the wearer, are, reasonable fitness for service, simplicity of operation, and adaptability to adornment, by monogram of the wearer or otherwise. From a manufacturing standpoint, I should say that among the prime requisites are ease and simplicity of manufacture, economy of material used, and a construction such as will permit the disassembly of the buckle to make it attractive to the retail trade from the standpoint of repair and its facility for adornment when sold.

The art of making buckles is old, and it is crowded. It therefore seems to me that, when a person is able to construct a combination of elements, each old in itself, which completely and effectively serves the purposes it was designed to serve, and in so doing meets with a success commensurate with its own more or less humble character, it bears the more important earmarks of invention. I admit that in a sense it may be said that Ballou merely brought into juxtaposition a number of old elements, and that in such position each is permitted to work out its own effect. Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241.

But, having regard for the state of the prior art and the objects in the mind of Ballou, can it fairly be said that his efforts did not result in the production of something novel? I think not. The buckle is capable of being manufactured, and when manufactured is capable of being utilized, in a manner and method different from anything which preceded it; and I am not prepared to say that there is here only the added result of the separate operation of the several elements, such as was condemned in that line of cases of which Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719, and Pickering v. McCullough, 104 U. S.

310, 26 L. Ed. 749, are outstanding examples. As was said in Ohmer Fare Register Co. v. Ohmer, 238 Fed. 182, 190, 151 C. C. A. 258, 266:

"* * * To escape aggregation, it is not necessary that all the constituents so enter into the combination as to coact all the time with all the others or change the mode of connection with every other. It is sufficient that the elements so coact that as a consequence of their union a new and useful result, and not a mere aggregation of several results, follows."

It seems to me that the swinging bail of the 'Ballou buckle, when in use upon a belt, by permitting the ends thereof to rest snugly against the tab end of the belt, tends to relieve the pressure exerted upon the adjustable roller journaled in the edges of the buckle frame. The relief thus offered is somewhat negligible, it is true; but, such as it is, it may also enable the roller more evenly, and therefore more securely, to grip the belt strap than would be possible if the roller's grip were subjected to the more or less uneven strain of a buckle equipped with a fixed crossbar, and which for such reason would not snugly hug the belt.

Beyond this, however, and more important, the swinging bail makes possible the equipment of the buckle with belts of varying thickness, and does it in a way such as to overcome any objection as undoubtedly could and would be raised to a buckle having an immovable crossbar, the pressure of which would cause one end of the buckle to gape, or stand out from the belt, and thereby calculated to catch and engage objects coming into contact therewith. At all events, when the Ballou buckle is in use upon a belt, each of its elements must, in order to serve the purpose of a belt buckle, coact with every other element. In so doing it is a unitary device.

[2] It is likewise worth while to note that, when the reissue was pending in the Patent Office, it was subjected to the charge of constituting aggregation and as being in conflict with the prior art. Upon reconsideration, however, the objections were resolved in favor of the applicant. Such fact is entitled to some weight, in that the allowance of the claims, after such objection, indicates that this action represented the deliberate judgment of an official more or less expert. Certainly the circumstance is not controlling, but it does have some persuasive influence.

It cannot for a moment be contended that the invention of the Ballou buckle is of commanding importance; indeed, for service, the old-fashioned tongue buckle continues to take precedence, and doubtless will do so for years to come. Nevertheless, in its own particular field, I have little hesitation in saying that the Ballou buckle combines novelty with a fair degree of superiority, and this may show invention. Ballard v. McCluskey (C. C.) 58 Fed. 880.

In accordance with and under the patent in suit, plaintiffs have manufactured and sold about 75,000 buckles at an average price of $2 each. The buckles thus sold have for the most part been manufactured of the semiprecious metals. It is fair to assume that, had baser metals been used and the buckles sold at a lower price, the sales would have been much greater. The buckle has been largely copied, and the extent of the infringing sales is unknown. The fact, however, that some 20

concerns engaged in manufacturing and selling roller buckles are united in the defense of the present suit is some indication that Ballou's type of buckle is one possessing commercial worth.

As bearing upon the question that the Ballou buckle is the result of mere mechanical skill, and likewise on the question of prior use, there is some evidence that in the spring of 1914 a mechanic of Attleboro, Mass., named Spier, at the instance of Joseph Finberg, contrived a buckle essentially similar to that of Ballou. Finberg had been upon a Western commercial trip, and upon his return brought with him such a buckle. Finberg places the date of such return as April, 1914, a month or two before Ballou completed his buckle. The time is fixed by means of a diary which Finberg kept of his various business trips. An examination of such diary, however, reveals the fact that the details of the trip supposed to have been taken in the spring of 1914 are written in a diary issued for the year 1915. I do not mean to suggest that Finberg willfully has made a misstatement of fact; on the contrary, he impressed me as desirous of testifying truthfully. I am none the less of the opinion that he acquired the buckle he gave to Spier, and which was used by the latter as a sample, at a later date than the spring months of 1914, and that in the lapse of time he has confused what he did on such trip with that which transpired upon another occasion. If Finberg purchased the buckle on the trip made in the fall of 1914, it may well have been one of the Ballou buckles, or an infringement thereof, inasmuch as the Ballou buckles went on the market in July, 1914.

A consideration of all the evidence in the case convinces me that it is not sufficient to justify a finding against the present patent, and I decline so to do.

What has been said has reference to claims 1, 3, and 4. As to claim 2, it is my judgment that it should not be sustained. Any contribution therein made to the art of buckle making does not, I think, amount to invention. Without further elaborating upon the subject, it is my thought that the functioning of the disclosures made in claim 2 lacks that new unitary result which I hold characterizes the other claims.

A decree in conformity herewith may go for complainants.