## PAUL BOYNTON CO. v. MORRIS CHUTE CO. et al.

### (Circuit Court, D. New Jersey. July 26, 1897.)

**1. PATENTS—PATENTABLE INVENTIONS—AGENCIES AFFORDING AMUSEMENT.**

Inventions affording amusement and diversion are classed among patentable subjects, but only the mechanical agencies employed can be patented; and unless these agencies are new either in themselves or in combination, or a new result is obtained by the co-operation of agencies, they will not be protected by a patent.

**2. SAME.**

In view of the old art of launching ships, there is no patentable invention in the combination of an inclined railway located near a body of water, and a boat-shaped car or toboggan, adapted to move downward over the railway, and, when it enters the water, to float thereon, and be propelled forward by the momentum derived from its descent.

**3. SAME—LIMITATION OF CLAIMS.**

When a claim in its natural meaning is so broad as to be invalid, the court cannot, in order to sustain it, read into it elements or restrictions which are not set out therein, and not referred to in the specifications except by implication.

**4. SAME—TOBOGGAN SLIDE—MECHANICAL EQUIVALENTS.**

In a boat-shaped toboggan, adapted to run upon an inclined railway, and enter a body of water at its foot, and be propelled forward thereon by momentum, there is no invention in providing the runners thereof with guide plates to prevent derailment, these being mere mechanical equivalents of the flanged wheels of the prior art.

**5. SAME.**

There is no invention in providing a boat-shaped toboggan, adapted for use with an inclined railway terminating on a body of water, with spray deflectors, to prevent the occupants from being splashed with water by the rapid movement of the toboggan in the water, since devices of this character have long been used for a similar purpose on boats moving swiftly through the water.

2 SAME—PATENTABLE INVENTION.
The Newburg patent, No. 411,255, for a combination of an inclined pleasure railway located near a body of water with a boat-shaped car adapted to be propelled upon the water by the momentum derived from its descent, is void as to all its claims, for want of patentable invention.

This was a suit in equity by the Paul Boynton Company against the Morris Chute Company and others, for infringement of certain patents for improvements in coasters or inclined pleasure railways.

P. C. Dyrenforth, for complainant.
Strawbridge & Taylor, for defendants.

KIRKPATRICK, District Judge. This suit was brought for the infringement of the complainant's two patents, No. 411,255, dated September 17, 1889, and No. 419,860, dated January 21, 1890. During the progress of the suit the charge of infringement as to patent No. 419,860 was withdrawn, so that the only matters for the consideration of the court are those connected with patent No. 411,255. The invention sought to be protected by this patent, which was taken out by John P. Newburg, and is held by the complainant by assignment, is stated in the specifications to relate to improvements in coasters or inclined pleasure railways; and what is claimed to be new is set out as follows:

(1) "In an inclined pleasure railway, in combination with an inclined way and track which is located or erected near a body of water, a boat-shaped car or toboggan, adapted, when it reaches the foot of the incline, to enter and float forwardly on the water, substantially as described."

(2) "In combination with an inclined railway which is located with its foot near a body of water, a boat-shaped car or toboggan, adapted to move downwardly over said inclined railway, and, entering the water at its foot, to float thereon, and be propelled forwardly thereon, by the momentum derived from its descent over the inclined railway, substantially as described."

(3) "In combination with the inclined railway having rails, E, the boat-shaped car or toboggan having runners and guide plates extending below said runners on its bottom, substantially as described."

(4) "In combination with the boat-shaped car or toboggan, the spray deflectors fixed to its sides, substantially as described."

(5) "In combination with the boat-shaped toboggan the spray deflectors and the convoluted plates fixed thereon, substantially as described."

(6) "In combination with an inclined railway which may be located near a body of water, a boat-shaped car or toboggan having runners, J, guard plates, K, and spray deflectors, I, substantially as described."

It is claimed for Newburg that he conceived and disclosed to the world a new amusement, known as "Shooting the Chutes." The agencies by which the amusement is afforded consist of an inclined plane erected adjacent to, and terminating in, a body of water, and a boat-shaped car or toboggan having runners and guides and spray deflectors, which shall not only slide down the inclined plane, but float and be propelled by momentum upon the water at the foot of the inclined plane. It appears from the record that Randall A. Harrington, on January 24, 1888, filed an application for, and on June 19, 1888, obtained, a patent, No. 384,843, for an inclined railway and water tobogganing apparatus, in which a wheel toboggan slide or inclined railway was so combined with a lake or other body of water that the momentum acquired by the car in its run down the railway should serve to carry it a considerable distance on the sur-

face of the water. This would have been in clear anticipation of claims 1 and 2 of the complainant's patent had it not been shown that prior to the date of filing Harrington's application, and as early as the summer of 1887, Newburg had put into practical use his idea of a water toboggan. It will be noticed that the Harrington patent includes no claim of patentable novelty in placing the inclined plane near by or adjacent to a body of water, as does the complainant's patent. Inventions which afford amusement and diversion are classed among patentable subjects, but only the mechanical agencies employed can be patented; so that while the adaptation of certain mechanical agencies may be the means of bringing great pleasure to many, and large profits to those first in the field, unless the agencies are new either in themselves or in combination, or a new result is attained by the co-operation of the agencies, they will not be protected by law, or a monopoly of their use granted.

Inclined pleasure railways of the roller coaster and toboggan slide type were in use long before Newburg made application for his patent, and that he knew of their existence is evidenced by the fact that, in the specification of his patent (page 1, line 9), he says that his invention relates to improvements in coasters or inclined pleasure railways. In his opinion, the novelty of his invention consisted in locating his inclined railway near a lake or other suitable body of water, and adapting a car or boat-shaped toboggan, which, descending the railway by gravity, should acquire a momentum that, when it entered and floated upon the water, should propel it forwardly. The boat-shaped car was intended to descend the inclined railway by gravity, as did the roller coasters known to the prior art, and, upon reaching the bottom of the railway, was to be propelled forward by its acquired momentum, as in the case of toboggans sliding over ice. What Newburg sought to secure by his patent he has set forth in his claims, which may be considered separately. Claims 1 and 2, which have been hereinbefore set out at length, contain the same elements. Claim 2 differs from claim 1 in that it states that the car or toboggan, on entering the water, is "propelled forwardly thereon by the momentum derived from its descent over the inclined plane." Taken together, they will be found to include in combination an inclined railway located near a body of water, a boat-shaped car or toboggan adapted to move downwardly over the railway, and, when it enters the water, to float thereon, and be propelled forwardly by the momentum derived from its descent. These elements are the same as those employed in the launching of ships. There is the inclined railway located near the body of water, and terminating therein; the boat or ship to be launched, which, by the force of gravity, slides down the inclined plane, and is adapted to float upon the water, and move forwardly thereon by its acquired momentum. If from claim 1 the word "pleasure" be omitted, and in claim 2 the word "ship" be substituted for "boat-shaped toboggan," we have a structure practically identical in arrangement and operation with that used in the launching of vessels.

But it is said that if these claims 1 and 2, with a broad interpretation of their terms, may be held to describe only the ancient art

of launching ships, then the court should give them a more limited construction, by which the boat-shaped toboggans of the claims shall be boat-shaped toboggans of such form that, when they shoot from the incline to the surface of the water, they shall not ship water or splash the passengers, and so read into the claims elements not specified therein. The complainant admits that there is no description in the claims of the patent nor in the specifications of a boat-shaped toboggan which, when used in the manner described in the patent, the occupant thereof shall not be splashed, but insists that these elements are clearly implied, and that there is nothing to the contrary. The duty imposed upon the patentee by the statute is to "particularly point out and distinctively claim the part, improvement or combination which he claims as his discovery," and, "if he fail to state this fully and correctly, his remedy for the omission is by surrender and reissue." Ice Co. v. Packer, 24 O. G. 1273, 1 Fed. 851.

In the case of White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, the court says:

"The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in any manner different from the plain import of its words."

The duty of the court is to construe the claims according to the plain meaning of their words; and, "if the claims are susceptible of two interpretations, that one should be chosen which upholds and vitalizes the patent." Consolidated Fastener Co. v. Columbian Fastener Co., 79 Fed. 795. But this cannot be held to include the formulation of claims by reading into or adding to them elements or restrictions which are not therein set out, and not referred to in the specifications except by implication. Being unable to read into claims 1 and 2 of the patent the elements or restrictions asked for, I am of the opinion that, as set out in the patent, they are, in view of the prior state of the art, void for want of patentable novelty.

Claim 3 of the patent relates to the means by which the boat-shaped toboggan, equipped with runners, is adapted to run on rails with guide plates on the bottom of said runners extended below the same, to prevent derailment. These runners and guide plates are stated in the patent to be the equivalents of flanged wheels, well known to the prior art. Reference has been made by the defendants to the Stoddard & Terwilliger patent, No. 314,626, and dated March 31, 1885, and the Staples patent, No. 334,094, dated January 12, 1886, which show devices the substantial equivalents of the elements contained in this claim. The Alexander patent, No. 277,625, dated May 15, 1883, and the Floyd patent, No. 367,286, dated July 26, 1887, show toboggans running on inclined ways, with wheels or runners adapted to prevent lateral motion of the toboggan and consequent derailment. Claim 3 of complainant's patent makes no mention of a body of water, but refers merely to the inclined railway and the boat-shaped toboggan, equipped in such manner as to avoid derailment in its descent along the track. The devices described perform no new function in pleasure railways, and are but the mechanical equivalents

of flanged wheels and other devices set out in the prior patents referred to.

Claim 4 is for the combination of the boat-shaped toboggan with spray deflectors fixed at its sides. The sprays deflectors do not become operative until the boat enters the water, and are in the patent stated to be a preferable device to deflect the spray or water outwardly by the rapid movement of the boat, and prevent its striking the occupants. The form of the flat boat referred to in the patent is such as to accomplish the same purpose, and yet would not be within the terms of the patent. Devices to prevent the splashing of occupants of boats moving swiftly through the water were known before the date of the Newburg patent; and examples of construction to equip the sides of boats with outwardly inclined dashboards, which are the equivalents of spray deflectors, are shown in patent No. 282,-853, issued to M. F. Davis, dated August 7, 1883, and No. 239,872, to Charles T. Lonial, dated April 5, 1881, and others to which reference has been made. I find no patentable novelty, in view of the prior state of the art, in attaching these old and well-known devices for deflecting outward the waves through which the boat rides, and so protecting its occupants from being splashed with spray, to the boat-shaped toboggan of the complainant.

Claim 6 is for the combination of an inclined railway, which may be located near a body of water, a boat-shaped car or toboggan, having runners, J, guard plates, K, and spray deflectors, I. We have seen that all of these elements are old in the art, and that they are not of themselves possessed of any patentable novelty. Do they combine in operation, and by their joint effort produce a new effect? "A combination of old devices, in order to be patentable, must contain (1) a novel assemblage of parts exhibiting invention; (2) the co-operation of these parts producing a new result." Hoffman v. Young, 2 Fed. 74. The learned judge, in the opinion above quoted, defines clearly the meaning of "co-operation": "The courts do not mean merely acting together or simultaneously, but unitedly, to a common end,—a unitary result. Each and every part must have its subfunction to perform, and each must have a certain relation to or dependence upon the other." What relation to or dependence upon the inclined railway do the spray deflectors bear? The near-by body of water does not affect the action of the guard plates, nor is the action of any element in the combination in any way dependent upon that of any other. The guard plates, K, and the runners, J, perform the same functions as when used in other apparatus in which boats and cars and toboggans run upon inclined ways. The boat-shaped toboggan is drawn down the inclined railway by force of gravity, as boats have been so drawn when launched since the early days. The guard plates and runners keep the boat upon the track or rails until it is launched upon the water, and the spray deflectors throw outward the water through which the boat rides. Each acts independently of the other, and each performs the same function that it did before they were united. "In a combination of old elements, in order to be patentable, all the parts must so act that each qualifies every other. It is not enough that these independent parts are conveniently asso-

ciated in one machine, if each performs the same function it did before they were united. They must be so connected that the new result is due to their co-operative action." National Progress Bunching-Machine Co. v. John R. Williams Co., 44 Fed. 191, and cases there cited; Green v. Soda-Fountain Co., 24 C. C. A. 41, 78 Fed. 119. Claim 6 does not comply with the requirements of setting out a patentable combination, and must therefore be held to be invalid.

On the whole case, for the reasons given, the bill should be dismissed.