HOWARD *et al. v.* ST. PAUL PLOW-WORKS *et al.*

*Circuit Court, D. Minnesota.* August 10, 1888.)

1. PATENTS FOR INVENTIONS—NOVELTY—HARROWS.
    Letters patent No. 178,461, issued June 6, 1876, to J. E. Perkinson, for an improvement in harrows, consisting of a combination of three harrows, the two outer ones being reversed and composed of parallel beams, the center one being A-shaped, and all three being connected by links with an equalizing bar or evener, are not void for want of novelty.

2. SAME—INFRINGEMENT.
    The above patent is infringed by harrows manufactured under letters patent issued to J. H. Harris, October 21, 1884, having the combination of the two outer reversed diagonal harrows with an A-shaped center harrow, the difference in construction of the center harrow in having several of its bars parallel, and the difference in connecting the harrows to the evener, not being sufficient to make a new element in the combination.

3. Same—Relief against Infringement—Corporations—Officers.
  Where the officers of a corporation are made co-defendants in an action for
  infringement of letters patent, a decree for an injunction and accounting will
  not issue against them individually where the corporation is solvent, and they
  have not as individuals violated, and are not threatening to violate, any rights
  of complainant.

In Equity.

This is an action brought by Harlan S. Howard and Ellen F. Perkinson, as administratrix of the estate of John E. Perkinson, deceased, against the St. Paul Plow-Works, Osmon Lunn, Henry H. Miller, William Dawson, Frederick C. Miller, Amherst H. Wilder, Charles H. Bigelow, and John Kerwin, to restrain infringement of letters patent No. 178,461, and for an accounting.

*Frackelton & Careins,* for complainants.

*John B. & W. H. Sanborn,* for defendants.

Shiras, J. On the 6th day of June, A. D. 1876, letters patent No. 178,461 were issued to John E. Perkinson for an improvement in harrows, and on the 17th day of March, 1883, the right to manufacture and sell such improved harrows throughout the United States was transferred and assigned by the patentees to Harlan S. Howard. The bill filed in the present case charges that the defendants are infringing upon complainants' rights by manufacturing and selling harrows which include the invention patented to said John E. Perkinson, and an injunction and accounting are prayed for. Substantially the defense is rested upon the two grounds of invalidity of the Perkinson patent, and a denial of the infringement complained of; it being claimed that the form of harrows manufactured by the defendant corporation does not embrace the combination covered by the patent issued to Perkinson. The patent to the latter covers a combination of three harrows, the two outer ones being reversed and being composed of parallel beams, the center harrow being A-shaped, and all of the harrows being connected by links with an equalizing bar or evener, the beams of the reversed outer harrows having the same inclination as the corresponding side beam of the center harrow. The evidence abundantly shows that harrows thus made are capable of efficient work upon side hills and uneven ground as well as upon level fields. The several sections, being unconnected with each other, are free to conform readily to the surface over which they are severally passing, and each section is easily raised, when necessary, to free it from accumulated rubbish. Harrows of this construction are also substantially free from the defect of tracking; that is to say, the teeth in the several bars will not get into line and thus make only one line or furrow in the ground for each bar. The evidence shows that many efforts had been made to construct harrows that would cover wide spaces, and yet thoroughly accomplish the work intended, and many devices to that end have been patented, yet none seem to have met with much favor until the form of harrow covered by the Perkinson patent was brought into use. It is not seriously questioned by defendants' counsel that this form

of harrow has, since its introduction, taken the lead in extent of use in the west, and is constantly growing in favor; but it is claimed that there is a want of novelty in it, because its essentials had previously been known, and, while it is an improvement upon those previously made, that such improvement is mechanical, and not inventive.    The burden of overcoming the *prima facie* case made out by the production of the patent is, of course, upon the defendant, and the defense of a want of novelty must be clearly established before a court will be justified in setting aside the patent on this ground.    *Coffin* v. *Ogden,* 18 Wall. 120; *Shirley* v. *Sanderson,* 8 Fed. Rep. 908; Walk. Pat. § 76.    In the answer of the defendant corporation it is averred that the principle and combination patented to Perkinson had been previously invented and described in the several patents, No. 55,351, issued to William S. O'Brien; No. 62,769, to B. C. Myers; No. 106,677, to George H. Ellis; No. 57,851, to Everal Bradley; No. 74,626, to E. Stellar; No. 135,464, to Hiram Cartwright; and No. 154,792, to Friedman.    In addition to these patents named in the answer, defendants also introduced in evidence patent No. 26,731, to Cheasebro; No. 180,617, to Moore; and No. 153,225, to Spies,—for the purpose of showing the condition of the art at the time the Perkinson combination was patented.    The various devices found in the several forms covered by these different patents sufficiently show that many persons were endeavoring to solve the problem of producing a harrow of such a combination of parts as would enable it to cover a large extent of ground, and yet conform to an uneven surface; yet it no less clearly appears that none of the forms produced accomplished the objects aimed at, unless it was that patented to Spies in July, 1874.    This form of harrow consisted of two diagonal harrows attached to an evener, the bars in the harrows being parallel.    It is admitted that by adding additional sections a greater width of ground can be covered.    The Spies form of harrow lacks the center A-shaped section found in the Perkinson harrow, and, as already said, the bars of the sections are parallel, and not reversed, as in the outer sections of the Perkinson model.    While there can be no question that the Spies form is an improvement over those preceding it, and that harrows constructed of this form are capable of efficient work, yet it is no less clear that the Perkinson harrow presents a different combination, in that it embraces the conception of reversing the outer sections of the harrow, thus changing the direction of the several bars composing these outer sections from a parallel to a converging direction, and introducing the middle A-shaped section; the several sections being so fastened to the evener that the draft is perpendicular thereto, the rear end of the entire harrow being broader than the front end.    The practical results produced by this combination are that the harrow readily conforms to uneven surfaces. and, when used upon a side hill, the teeth do not track, and it is in the latter particular that the Perkinson specially differs from the Spies harrow in actual use.    There is therefore to be found in the Perkinson harrow a combination of parts other and different from that appearing in the Spies and all preceding forms, and productive of sufficiently novel results to sustain the Perkin-

son patent against the charge of want of patentable novelty, and we are thus brought to the question whether the harrow manufactured by the defendant corporation is in fact an infringement of that patent.

In the form of harrow manufactured by the defendant corporation are found three sections, the outer ones reversed, and the center one A-shaped in its general contour. It is not questioned that the general results obtained by this form of harrow are not materially different from those produced by the Perkinson harrow. The differences in construction mainly relied on as an answer to the charge of infringement are in the shape and mode of constructing the center section, and in the coupling of the same to the evener. The center section in the form of harrow manufactured by defendant is, as already stated, A-shaped, in that the outer side-bars converge towards the front end; but it differs from the form used in the Perkinson patent in the arrangement of the inner bars, having several that are parallel. This difference in the arrangement of these inner bars does not change the general form, office, or mode of operation of the center section sufficiently to make it a new element in the combination. This section in both forms of harrow is placed between the reversed outer diagonal sections for the purpose of covering the space that would otherwise not be covered, and, while the form of the center section in defendant's harrow may be an improvement in some minor particulars over that used in the Perkinson harrow, still the general purpose subserved thereby is identical. In other words, the harrow manufactured by the defendant company includes the combination invented and patented by Perkinson, and the mere changes in the inner bars of the center section as used by the defendant, and in the arrangement of the teeth therein, will not avail to defeat the charge of infringement; and the same is true of the claimed differences in the mode of attaching the sections to the evener. Even if it be admitted that the defendant's form of harrow manufactured according to the patent issued to J. H. Harris on October 21, 1884, does in some respects vary from that patented by Perkinson, still it cannot be denied that it presents the combination of the two outer reversed diagonal harrows, with a third or or center harrow intended to cover the space that would otherwise be left uncovered between the outer harrows, all the sections being independently attached to one evener; and that thereby the defendants in fact include in the harrow by them made the practical results derived from the Perkinson combination, by using substantially the same means. This being so, it follows that such use is an infringement of complainants' rights under the Perkinson patent.

The president and directors of the St. Paul Plow-Works have been made co-defendants with the corporation in this proceeding, and a decree against them individually is sought by complainants. It is not shown in the evidence that the persons named have, in their individual capacity, manufactured or sold any harrows, or that they have individually derived any profit or advantage therefrom. They have severally answered the bill of complaint, and the question is whether a decree, either for an injunction or for an accounting, should be granted against them.

In cases wherein it appears that the name of a corporation is used as a mere shield or cover for the protection against liability of the real parties in interest, or where by reason of the insolvency of the corporation a decree against it would be futile, a court of equity may doubtless entertain a bill and give relief against those by whom the affairs of the corporation are managed, and who, in that capacity, have been active in violating the rights of a patentee; yet these are cases presenting special features, and it does not follow that in other cases such relief will be granted against the officers of the corporation. In the case now under consideration it is not proven that the defendant corporation is insolvent, nor that the defendants, Lunn, Miller, Dawson, *et al.*, as individuals, have violated any rights of complainants, or that they by manufac..ring and selling harrows which are infringements of the Perkinson patent have deprived complainants of any gains, or that they have themselves reaped any profits therefrom. All the acts charged against them are acts done in carrying on the business of the corporation, for the benefit of the corporation and its stockholders; and under such circumstances no reason is perceived why a decree, either for an accounting or for an injunction, should be rendered against them as individuals. The decree for an injunction against the corporation is binding upon its officers and agents, without making them personally parties to the bill, and so also the decree for an account can be made fully operative without their presence as parties. It is not claimed by complainants that the individuals named have been manufacturing or selling harrows, or that they purpose so to do in violation of complainants' rights. Why, then, should the court enjoin them from so doing, and thus put the costs of such injunction upon them? It is not shown that for any reason a decree for an accounting and an injunction against the corporation alone will not fully protect the rights of complainants herein. Why, then, should writs of injunction be issued and served upon the individual defendants, thereby increasing, for no purpose, the costs to be paid by the corporation? In the absence of any reason justifying the making the individuals named parties defendant hereto, it must be held that as to them the complainants have failed to make out a case, either for an injunction or accounting, and therefore as to them the bill must be dismissed at the cost of complainants. As against the defendant corporation the decree will be for an injunction and for an accounting.