FARMERS' MFG. CO. v. SPRUKS MFG. CO. et al.

(Circuit Court, E. D. North Carolina. December 23, 1902.)

1. PATENTS—INFRINGEMENT—INDIVIDUAL LIABILITY OF OFFICERS OF CORPORATIONS.

Officers of a corporation are not liable in equity for infringement of a patent by the corporation where they are not charged with having participated in the infringement otherwise than as officers of the corporation.

2. SAME—DETERMINING VALIDITY—MATTERS OF COMMON KNOWLEDGE.

In determining the novelty of a patented device, the court will take judicial notice of matters of common knowledge relating to the state of the prior art.

3. SAME—VALIDITY—INVENTION

Patents are valid only when granted for a mechanically novel structure which involves invention, and not merely for an old thing in a better shape or of better material, or having its utility due to mechanical skill in adopting what was old.

4. SAME—PATENTABLE NOVELTY—VENTILATING BARRELS.

The East patent, No. 429,021, for a ventilating barrel made of a sheet of veneer provided with parallel slits arranged lengthwise the barrel, and terminating at a distance from the ends, leaving the edges of the veneer sheet integral, is void for lack of patentable novelty in view of the prior art which showed both barrels made of veneer sheets and bilged, and barrels and baskets having ventilating holes and slits in the sides. Claims 1 and 3 also construed, and *held* not infringed, even if conceded validity.

In Equity. Suit for infringement of letters patent, No. 429,021, for a ventilating barrel, granted to John F. East May 27, 1890. On final hearing.

E. T. Fenwick, S. C. Bragaw, and A. D. Ward, for complainant.
H. T. Fenton and W. B. Rodman, for defendants.

PURNELL, District Judge. Complainant filed a bill in equity as assignee of John F. East, on letters patent No. 429,021, May 27, 1890, for alleged improvement in ventilating barrels. The corporation defendant and its officers are jointly and severally charged with infringement by the manufacture and sale of barrels alleged to be substantially similar to the patented barrel. The answers filed by those defendants served with process set up the usual defenses in patent cases, but the proofs were directed to two issues only: (1) That the patent is invalid for want of novelty in the thing patented, if the claims are construed as the complainant contends; and (2) noninfringement, under any proper construction of the claims of the patent. Although complainant's patent contains four claims, it is alleged to be infringed by defendants' device only as to claims numbered 1 and 3, it being conceded that claims numbered 2 and 4 contain limitations which exclude defendants' device.

Claims 1 and 3 alleged to be infringed are as follows:

"No. 1. A barrel or receptacle having its sides composed of a sheet of veneer provided with parallel slits arranged lengthwise the barrel and terminating at a distance from the edges of the sheet and leaving the edges of the veneer sheet continuous or integral, as shown and described."

"No. 3. A barrel or receptacle having its sides composed of a sheet of veneer provided with parallel slits arranged lengthwise the barrel and terminating at a distance from the edges of the sheet and expanded in the middle to a greater diameter than at the ends, substantially as shown and described."

The defendant Geo. T. Leach, president of defendant corporation, answering the bill, denies that he has done or committed any act or thing in respect to the matter recited in the bill or alleged to have infringed any rights of the complainant in his individual capacity, and has not on his individual account made, used, or sold any ventilating barrels or co-operated with or acted for the said corporation codefendant in making, using, or selling any such barrel, except as an officer of said corporation, and that he is advised that the bill is defective and insufficient for lack of averment in charging him with the commission of any act, matter, or thing in his individual capacity. The objection of this defendant is sustained. As to him and the other defendants in their individual capacity, it is adjudged and decreed that the bill be dismissed. If it was intended in the bill to charge a conspiracy by the individual defendants served, the remedy would be at law, and not in equity. Ambler v. Choteau, 107 U. S. 556, 1 Sup. Ct. 556, 27 L. Ed. 322; Bowers v. Atlantic, Gulf & Pac. Co. (C. C.) 104 Fed. 887.

This narrows the inquiry to the contention between complainant and the Spruks Manufacturing Company, defendant, on the merits of the bill. The first inquiry which naturally presents itself is, for what novelty or device was the complainant granted letters patent? The letters patent, it is admitted, have not been adjudicated, hence the state of the art and the novelty of the device or claim is necessarily involved, and this question is expressly raised by the issues on the pleadings as well as in the argument. In considering questions of this nature, a court will not shut its eyes to what may be termed common knowledge, but will take judicial notice of such matters without proof. Slawson v. Railroad Co., 107 U. S. 649, 2 Sup. Ct. 663, 27 L. Ed. 576; Phillips v. City of Detroit, 111 U. S. 604, 4 Sup. Ct. 580, 28 L. Ed. 532; Glue Co. v. Upton, 97 U. S. 3, 24 L. Ed. 985. The idea of a barrel is not new, nor is that of a ventilating barrel. The ordinary barrel with holes hacked in the staves for ventilation in shipping fruits, vegetables, and such articles of commerce which contain moisture, was used years prior to the East patent. The same may be said of veneering or thin sheets of wood veneer. This is not only common knowledge, but is proved in the record and admitted by all parties,—which is unnecessary.

In 1861, S. Roberts obtained letters patent, re-issued in 1874, No. 6,044, for a barrel made of a sheet of wood veneering, in which it is said the "invention relates to the formation of a barrel from volute sheets," etc. Roberts, it is claimed, is the first person to have made a barrel with a sheet of wood veneering. At all events, he did so, and obtained letters patent long prior to complainant's device. In 1887, letters patent, No. 7,289, were granted to E. B. Georgia for a stave barrel, with a bilge or curve having parallel slots cut longitudinally in the periphery, and not extending to the chine ends, for

the purpose of ventilation in the shipment of perishable goods, fruits, vegetables, etc.

In 1889, letters patent, No. 417,218, were issued to Henry C. Bailey for a wooden mat, described in the specifications as consisting of "wooden mats and similar articles from wooden blanks." This patent shows that slitted wood veneer sheets, with the slits held open, were used to make mats and other articles prior to complainant's invention.

The Cook patent, 1859, No. 24,723, and the Mabbett patent, 1868, No. 73,352,—the former for ventilated fruit baskets and the latter for berry boxes,—show the prior use of the idea of a receptacle of thin wood, slotted for ventilation. It will be seen from an examination of these patents that barrels made of a thin sheet of veneer, bilged or curved barrels made of a single sheet of veneer, barrels formed primarily in cylindrical form from a single sheet of veneer, and then given a bilge or curve by slotting the edges of the blank and contracting the ends; that ventilating barrels formed by a double series of parallel slots extending from near the center, and not out to the edge or chine end; that circular shaped berry baskets with ventilating slots; and that flaring baskets with wood strips, slotted and with terminal holes, expanded and held open by inside and outside bands,—were in use, constituting the state of the art, and not novel, such as should have entitled any one to letters patent for either in 1890, the date of the East patent, upon which complainant by assignment bases its suit.

A patent is a monopoly, generally denominated, the consideration for which is the disclosure by the patentee of something not then within the domain of public knowledge, or the ability of mechanical skill of persons in the art having personal knowledge of anything which was then old, to produce as the result of such mechanical skill, when called upon to do so by the necessity of the trade. Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901; Thompson v. Boisselier, 114 U. S. 1, 5 Sup. Ct. 1042, 29 L. Ed. 76; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856. Patents are valid only when granted for a mechanical novel structure which involves invention, and not merely an old thing in a better shape or of better material, or having its utility due to mechanical skill in adapting what was old. Gardner v. Herz, 118 U. S. 180, 6 Sup. Ct. 1027, 30 L. Ed. 158.

Tested by these and authorities of like trend, the East patent, when analyzed by reference to the patent itself and the claims thereunder, its scope, determined by the actual application of the invention claimed by the patentee, did not, in view of the extensive, prior art knowledge, involve anything more than ordinary mechanical skill,—a making by machinery instead of by hand, hence in a more marketable form at less cost, of what was then well known, and is anticipated under the rules in such cases. Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566. Possibly the end to be accomplished,—producing by machinery instead of by hand, at a less cost, and in a more marketable form,—

might entitle complainant to letters patent on the machine, or mechanical invention. But not the product. This, however, the court is not now attempting to decide.

For the reasons stated the court is, therefore, constrained to adjudge the East patent, No. 429,021, invalid.

But for a full determination of the cause, and admitting, for this purpose only, the validity of complainant's patent, or the East patent assigned to complainant, the court further finds, as a fact and conclusion of law, the said letters patent have not been infringed by defendant corporation, the Spruks Manufacturing Company. The defendants' barrel (Canfield barrel, February 1, 1901) is made from a sheet of veneer. The latter is cut to form two barrels, the central dividing line showing the line of cutting the sheet into two parts, from which two barrels are made. The blank for each barrel is a flat sheet having at each end a series of gores of V-shaped openings or slots, and intermediate the opposite gores, between the end hoops and the center bilge, a series of parallel cuts, partially through the wood. Barrels having a series of longitudinally arranged slots provided as ventilating openings were old (Roberts' patent). It is evident that both complainant and defendants have each merely improved upon the prior art; that neither is the originator of the three basic principles involved in each,—ventilating openings, a veneer barrel, and a bilged or curved veneer barrel. In such case, "if the advance towards the thing desired is gradual, and proceeds step by step so no one can claim the complete whole, then each is entitled only to the specific form of device which he has produced." Railroad Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053.

Th complainant's patentee, East, was not the first to make a ventilating barrel, nor was he the first to make a veneer barrel, or the first to make a bilged veneer barrel. In view of which, the fact that defendants' barrel is a ventilating barrel, that it is a veneer barrel, and that it is a bilge veneer barrel, does not determine or aid in determining its identity with complainant's barrel. That both are designed to effect the same purpose is not of importance in such inquiry. Results are not patentable, only the means to effect results. Case v. Brown, 2 Wall. 320, 17 L. Ed. 817; Corning v. Burden, 15 How. 252, 14 L. Ed. 683. Complainant and defendants started with the disclosures of the Georgia and Roberts patents as the foundation of their respective devices. With the early Georgia patent before a cooper or barrel maker, it certainly did not involve invention to cut a series of parallel ventilating slots or slits in the periphery of the Roberts bilged veneer barrel, more especially as that had been common with stave barrels. But East did not so alter the Roberts barrel, but, starting anew with Roberts' sheet of veneer, and avoiding Roberts' method of making a bilge barrel by contracting the chine ends, he did three things, which differentiate his method and the product of it,—three steps which are sequential, the order of which is essential,—and all so dependent on each other that none may be omitted without destroying or at least failing to obtain the resultant finished product,—the ventilating bilge barrel of veneer de-

scribed in the patent. Instead of cutting out edge gores as Roberts did, East substituted parallel slits or cuts arranged transversely to the length of the blank (parallel with the finished barrel), and extending only through the middle portion of the blank, uncut and continuous or integral, for the purpose of forming the chine ends of the barrel. Following Roberts, he rolled the sheets in cylindrical form and bilged or curved it, not, as Roberts did, by slotting or goring the end edges contracting the cylinder at the ends and bilging it at the center by surface slits, not through, thus causing ventilating spaces. In short, defendants obtained ventilation by means of the slotted ends, and complainant through the expanded center slits. But having taken these two steps, he, East, had a radical series of bent bows or staves, connected at the top and bottom, and under powerful tension, creating a natural and continuing tendency to split the opened slits out to the end; hence he supplied an absolutely essential means to prevent this splitting, by fixedly holding the barrel in the bilged or curved form which such middle expansion gave it, these holding means being "hoops placed inside the barrel to hold the sides of the barrel to its expanded form." And thus he accomplished what complainant now makes and sells, i. e., a ventilating veneer barrel, in which all of these features are required to be present.

Defendants, on the other hand, in the production of their barrel, began with the same Roberts veneer sheet. They preferred Roberts' method of giving the bilge or curve to the barrel, hence gored or notched the end edges, as he did, but cut the gores wider and deeper, so that, after forming a cylinder and when contracting its chine ends (still following Roberts), the widened gore edges would not be brought together, but leave deep ventilating spaces, and put on the usual outside quarter hoops,—and none inside, for none were needed there,—and supplied ventilation near the head or chine ends rather than altogether in the central portion of the barrel. The defendants' barrel is thus shown to be evolved from the Roberts barrel, and not from East's. Defendants widened the end gores or notches by a series of surface cuts on the veneer sheet. Complainant claims these are the slits of his patent. Hence this suit. Aside from the fact that the patented device is in the nature of, and described and claimed as, a combination of old elements, and hence to be compared as an entirety; and aside from the fact that the defendants' device wholly lacks two essential elements of the patented device—middle expansion, and integral chine ends without which it cannot be legally identified with that of the patent. This contention, therefore, cannot be sustained.

The sole other contention of complainant, on which he bases identity of defendants' structure with his, is that defendants' surface cuts, between the outside quarter hoops, are the same as, or the equivalent of, East's "slits."

In the depositions and the argument much expert testimony and learning are devoted to drawing a distinction between slits and slots,—the slots in the Roberts barrel and the slits in the East barrel. Expert testimony is sometimes valuable and frequently interesting, but

seldom controlling,—never when directed to matters capable of ocular demonstration, unscientific matters. That a slot is when a part of the veneer or wood or other material is cut out and removed, and a slit simply when it is cut through, does not require expert testimony or argument to determine. Both are understood as applicable to wood by every hammer and saw carpenter. Neither are per se patentable. Complainant uses a slit as described in the application for the East letters patent for the identical purpose for which Roberts used a slot,—ventilation. But giving to complainant all that is claimed in the argument, defendants do not and have not used for ventilation the slit in complainant's claim or device. Defendants obtain ventilation by means of slots at different places on their barrel from the slits on complainant's barrel, and only use gashes or slits, partially through the veneer, to obtain pliability or bilge. They are not the same, but are they equivalents? It is not controlling if they are, but they are not. "One thing, to be the equivalent of the other, must perform the same function as that other." Rowell v. Lindsay, 113 U. S. 103, 5 Sup. Ct. 507, 28 L. Ed. 906. But even this is not conclusive of identity; for "function must be performed in substantially the same way by an alleged equivalent, in order to constitute it such." Burr v. Duryee, 1 Wall. 573, 17 L. Ed. 650; Dryfoos v. Wiese, 124 U. S. 37, 8 Sup. Ct. 354, 31 L. Ed. 362. An infringement involves substantial identity. The argument used to show infringement assumes every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose.

It is therefore ordered, adjudged, and decreed:

1. That the East patent, No. 429,021, is invalid for the reasons stated.

2. That there is no infringement of the East patent by defendants.

3. That the bill herein be dismissed.

4. That the defendants recover of the complainant their costs and disbursements, to be taxed by the clerk of this court.

A formal decree will be drawn accordingly.