SAXLEHNER v. EISNER et al.

(Circuit Court of Appeals, Second Circuit. June 7, 1906.)

No. 280.

**1. TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT—PERSONS LIABLE—OFFICERS OF A CORPORATION.**

Where the executive officers of a corporation held a full power of attorney authorizing them to act in all matters pertaining to the company, and the directors were practically nonentities, the corporation's entire activities being within the control of such officers, they could be personally charged with infringement of trade-marks and unfair competition in the transaction of the corporation's business.

**2. SAME—INJUNCTION—EQUITABLE JURISDICTION.**

Where defendants, as executive officers of a corporation, had personally directed the infringement of complainant's trade-marks, and in March, 1901, filed an answer averring that complainant had, long prior to the commencement of the suit, lost all exclusive right to its label as well as to the name and shape of its bottle, complainant was justified in

alleging in a bill to restrain defendants personally from continuing such infringement, that defendants intended to continue the same.

3. INJUNCTION—CORPORATIONS—OFFICERS INDIVIDUALLY—EFFECT.

That a corporation, and through it, its officers, agents and servants, had been enjoined from further infringing complainant's trade-marks, and from conducting a business campaign of unfair competition, did not preclude complainant from obtaining an injunction restraining certain of the officers in their individual capacity from performing such unwarranted acts.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 7.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon an appeal from a judgment of the Circuit Court, Southern District of New York, directing that an injunction issue and adjudging that complainant recover the sum of $31,-030.36 as damages for infringement of trade-marks and unfair competition. The cause is reported below in 140 Fed. 938.

A. F. Cook, for appellants.

Antonio Knauth, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. In Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, it was held that defendant had fraudulently appropriated the complainant's bottle and label without justification or excuse, and the court sustained a decree of the Circuit Court, Southern District of New York for an injunction and accounting against that defendant. The Eisner & Mendelson Co., originally a Pennsylvania corporation, was succeeded by a corporation of the same name incorporated under the laws of West Virginia. Of both companies the defendant Eisner was president and Joseph Mendelson treasurer. The decree in the suit which went to the Supreme Court was against the West Virginia corporation, and, upon the accounting, the master found nearly $30,000 profits for which final decree was entered. The decision of the Supreme Court was rendered October 15, 1900, and the accounting was commenced February 15, 1901. This suit was begun November 23, 1900, against defendants, on the theory that they were contributory or joint infringers with the company, having committed infringements not only as officers of the company but also individually, jointly, and severally. The complainant averred that she first learned of the individual acts of defendants in the course of the proceedings against the West Virginia corporation. The Circuit Court sustained the bill, and held defendants liable for the same amount as that already found against the corporation as profits. The case is so fully discussed in the opinion of Judge Hazel who heard it at circuit that a brief reference to the propositions advanced on this appeal will be sufficient.

It is contended:

1. That executive officers of a corporation cannot be held personally liable for infringements by the corporation. In Hutter v. The De Q.

Bottle Stopper Co., 128 Fed. 283, 62 C. C. A. 652, this court held that they could be so held where they have infringed the patent as individuals or have personally directed infringement.

2. That these defendants merely acted as executive officers of the company without any such personal initiative as would make them participants in the infringement. In our opinion the evidence shows the contrary. They were not only executive officers but also held, each of them, a full power of attorney authorizing them to act in all matters pertaining to the company. The directors were practically nonentities. Whatever business was to be done and whatever transaction was to be had rested entirely and solely with these two individuals who acted on their own initiative and do not seem to have reported to the directors what they did in carrying on the business. No one can read the testimony of the defendants including that taken in the suit against the corporation (which was put in evidence here) without being convinced that they were practically the corporation, managing it, and controlling its affairs as if it were a partnership, with themselves sole partners; that the scheme of pirating complainant's label originated with them, was worked out and carried into effect by their personal exertions; and that in reality the corporation was but the cover for their individual enterprises. Under such circumstances there might be a failure of justice if the plaintiff who has seen his trade-marks boldly appropriated for many years should be denied any relief against the individuals through whose pernicious activity alone he has been made to suffer the consequent loss.

3. That it appears by the record that all use of infringing bottles and labels by the Eisner & Mendelson Company ceased November 1, 1900, three weeks before this suit was begun. That, therefore, there was no threatened infringement to be guarded against, since all prior infringing acts of defendants had been the acts of the company. That therefore since the bill could not be sustained for an injunction there was no jurisdiction in equity. The bill, however, does aver an intention on the part of defendants to make further sales. In view of the past conduct of defendants, complainant might fairly aver an apprehension that they would in some way continue the old infringement or concoct some new one, even though the company were itself enjoined. The circumstance that since that time they have not in fact infringed is not controlling. That they had already infringed is shown, and that complainant's apprehensions were not altogether unfounded is demonstrated by the answer which was interposed in March, 1901. Instead of conceding complainant's rights, adjudicated months before by the Supreme Court, and averring that it is their intention to respect those rights and to refrain from infringement, the answer avers that complainant had long prior to the commencement of the suit lost all exclusive right to its red and blue label as well as to the name and the shape of the bottle. The interposition of such an answer indicates that complainant was quite justified in anticipating that at any time in the future some infringement of such label might be put on the market by defendants.

4. That the defendants were already enjoined, and that, therefore,

the court should have declined jurisdiction of this bill for an additional injunction.

The theory is that an injunction against the company bound its officers, agents, and servants. That is true enough, but it was within the power of the defendants to dissolve that injunction, so far as they were concerned, by resigning, and thus ceasing to be officers, agents or servants of the enjoined company. Against their personal acts there could be no absolute protection except a personal injunction.

The conclusions above expressed render it unnecessary to examine a point raised as to the admission of certain testimony.

The decree is affirmed, with costs.