WESTON ELECTRICAL INSTRUMENT CO. v. EMPIRE ELECTRICAL INSTRUMENT CO. et al.

(Circuit Court, S. D. New York. February 11, 1909.)

1. PATENTS (§ 315*)—SUITS FOR INFRINGEMENT—REHEARING.
    In a suit for infringement of a patent against corporations and the president of one as an individual, where an interlocutory decree was entered finding infringement by the corporations only, and referring the case for an accounting, it is competent at any time before the entry of final decree to reopen the case and permit a retrial of the question of the liability of the individual defendant on newly discovered evidence.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 554; Dec. Dig. § 315.*]

2. PATENTS (§ 315*)—SUITS FOR INFRINGEMENT—REHEARING—EVIDENCE.
    On such rehearing, however, evidence taken before the master on the accounting by the corporations cannot be considered against the individual defendant except in so far as his own testimony may be treated as an admission out of court, since he was not personally a party to such accounting, and his own liability was not then in issue.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 554; Dec. Dig. § 315.*]

3. PATENTS (§ 259*)—CONTRIBUTORY INFRINGEMENT—OFFICERS OF CORPORATIONS.
    To charge the president of a corporation personally with liability for its infringement of a patent, it is not sufficient to show that he was its president, but it must be shown affirmatively that he acted beyond the scope of his office in causing or aiding in the infringement.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 400; Dec. Dig. § 259.*
    Contributory infringement of patents. see notes to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485; Æolian Co. v. Harry H. Juelg Co., 86 C. C. A. 206.]

4. PATENTS (§ 259*)—CONTRIBUTORY INFRINGEMENT—OFFICERS OF CORPORATIONS.
    That an officer of a corporation after a decree was entered against it for infringement of a patent, and a reference ordered to ascertain the damages recoverable by complainant, aided in disposing of the corporation's property or shared in its proceeds, even though such disposition was fraudulent, does not render him personally liable as a contributory or joint infringer.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 400; Dec. Dig. § 259.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. This is a motion on exceptions filed to the report of the special master for a confirmation of such report and entry of judgment against the defendant, Charles D. Cooke, individually, for treble damages as found and reported by the special master and the court.

See, also, 155 Fed. 301.

Kenyon & Kenyon (William H. Kenyon and Richard Eyre, of counsel), for complainant.

Griggs, Baldwin & Pierce (Franklin Pierce and Charles H. Studin, of counsel), for defendant Cooke.

RAY, District Judge. In December, 1901, the complainant, the Weston Electrical Instrument Company, filed its bill in equity against the defendants, the Empire Electrical Instrument Company, Charles D. Cooke, president, George M. MacWilliam, secretary, and the F. A. La Roche Company, for infringement of certain United States letters patent, and charged infringement by all the defendants in that the defendants "jointly make, use, and vend to others to be used" the patented invention, describing it, and that "they still continue so to do, and that they are threatening to make large quantities of the said shunts for electric light and power stations, and to supply the market therewith, and to sell the same all in infringement," etc. The bill also charged:

"That the said defendants have made and sold and used, and are making, using, and selling, large quantities of said infringing shunts for electric light and power stations, and have large quantities on hand which they are offering for sale, and that they have made and received large profits and advantages therefrom, but to what extent and how much exactly your orator does not know, and prays discovery thereof."

The bill of complaint demanded an injunction and an accounting in the usual form.

To this bill the defendants filed their answer, in which we find the following:

"But these individual defendants, Charles D. Cooke, president, and George N. MacWilliam, secretary, aver that they have acted merely as agents of the said defendant corporation the Empire Electrical Instrument Company, and not for themselves or on their own behalf, wherefore they * * * aver that they should not be required to make other or fuller answer to the bill."

They also denied infringement. A large amount of evidence was taken in the usual manner, and the case was brought to a final hearing before his honor, George C. Holt, and resulted in an interlocutory decree of this court made June 22, 1904, in which it was adjudged that the letters patent were good and valid in law, etc., that the complainant was the owner thereof, and that "the said Empire Electrical Instrument Company and F. A. La Roche Company, the defendants herein, have infringed upon the claims," naming them, and also in what the infringement consisted; and it was in such decree thereupon "ordered, adjudged, and decreed that the complainant do recover from the defendants Empire Electrical Instrument Company and F. A. La Roche Company all the gains, profits, and advantages

which the said defendants have derived," etc., and "that the said complainant do also recover, in addition thereto, any and all damages which complainant has sustained" by reason of such infringement. It was referred by such decree to Samuel M. Hitchcock as master to take an account of such profits, damages, etc., arising out of the infringement by the defendants found to have infringed, and the decree directed that a perpetual injunction issue against the defendants Empire Electrical Instrument Company and F. A. La Roche Company, and that the complainant recover costs, etc., against the said defendants.

This is the only decree entered in the cause, and the court upon the issues framed and on the trial thereof has never found infringement by the defendant Charles D. Cooke, and it has never directed a reference to ascertain profits, damages, etc., arising from any infringement of the patent in question by said defendant Cooke. On this interlocutory decree the matter went to a hearing before the said special master, and much evidence was taken, and thereupon the master made his report dated November 19, 1906, in and by which report the master found:

"I find, therefore, that the complainant is entitled to recover against the said Empire Electrical Instrument Company as damages on account of infringing shunts sold to persons other than the F. A. La Roche Company the sum of $2,347.07.

"I find that complainant is entitled to recover from the F. A. La Roche Company as damages on account of infringing shunts installed and sold by it, other than those made by the said Empire Company, to be the sum of $11.61.

"I find that complainant is entitled to recover as damages from the said Empire Electrical Instrument Company, and the F. A. La Roche Company, jointly, for shunts manufactured by the said Empire Company, and sold and installed by the said F. A. La Roche Company, the sum of $576.76."

In that report the master also said:

"The testimony of MacWilliam is so evasive and self-contradictory as to be utterly unreliable, and it is incredible that Cooke, in view of his large business experience, his large financial interest in the defendant companies, and the activity he has shown to have manifested in their affairs, should have been so ignorant of the dealings and transactions of the Empire Company as he claims to be; and when I consider that Mr. Cooke testified that he did not remember when he became a stockholder in the Empire Company, and he is then shown to have been one of the original incorporators, I conclude that his testimony is not entitled to great weight. * * *

"I am obliged, also, to discredit the testimony of Mr. Rypinsky and Mr. Cooke, as being, to say the least, exceedingly prejudiced and entirely conjectural, and they were the only other witnesses representing the defendants whose testimony tends to show the cost of this item."

On this report of the special master the matter came on for hearing before Judge Holt on a motion to confirm and for a final decree, and on that hearing Judge Holt wrote an opinion in which he said:

"I am satisfied that this was a case of deliberate and intentional infringement by all the original defendants, who knew that they had no right to manufacture or deal in the Weston shunts, and that they have defended the suit with the purpose of protracting the litigation as much as possible while they continued to infringe, and of ultimately transferring the assets of the Empire Company, if judgment should go against them, and thus, if

possible, render any recovery nugatory. The defendants' conduct on the accounting appears to have been equally blameworthy. They have pursued a policy throughout the proceedings on the accounting of obstruction and concealment of the facts, and in my opinion this is a proper case to impose upon the defendants triple damages. I do not think that the statute permits the court to impose triple costs. The fact that in the interlocutory decree no judgment was entered against the defendant Cooke prevents, in my opinion, any recovery against him on the case as it now stands; but as the facts elicited on the accounting make it appear probable that Cooke was an actual party to the original infringement and to the proceedings by which the Empire Company parted with its assets, I direct that the case be referred back to the master, if the complainant so elects, with instruction to take any additional testimony which the defendant Cooke or any of the parties may desire to offer, and to report upon such testimony and all the other testimony already taken in the case whether judgment should be entered in this case against the defendant Cooke as well as against the two companies held liable upon the interlocutory decree. If the complainant does not elect to take further proceedings before the master against the defendant Cooke, final judgment may be entered confirming the master's report, and for triple damages, and the costs as taxed against the two companies held liable by the interlocutory decree."

Thereupon March 1, 1907, an order was made by Judge Holt directing as follows:

"Ordered, that this case be referred back to the master, Samuel M. Hitchcock, Esq., to take testimony relative to the question whether judgment should be entered in this case against the defendant Charles D. Cooke, as well as against the two companies held liable upon the aforesaid interlocutory decree, and to report to this court with all convenient speed upon such testimony and on the other testimony already taken in the case as to whether judgment should be entered in case against the defendant Cooke as well as against the two companies held liable upon the interlocutory decree; and it is

"Further ordered, that the complainant, on such further reference to the master, shall have the right to cause an examination of the defendants, or either of them, ore tenus, or otherwise, and also the production of the books, vouchers, exhibits, statements, documents of said defendants, or either of them, as the said master may direct, and that the said defendants and each of them attend for such purpose from time to time as the said master shall direct."

This order having been entered, the complainant elected to proceed under it, and brought the matter on for a hearing before the special master. The defendant Cooke appeared specially for the purpose of objecting to the jurisdiction of the master to take testimony under the last-mentioned order, and entered the following objections, the substance only being given: (1) That the action was not against Cooke individually, but only in his official capacity, and that judgment against him personally cannot be rendered; (2) that the bill does not charge Cooke with personal infringement or wrong; (3) that by the interlocutory decree it is solemnly adjudged by the court that the Empire Electrical Instrument Company and the F. A. La Roche Company are the only parties who have infringed and the only parties against whom the complainant is entitled to recover profits and damages, and that under the decree appointing the master he is without jurisdiction to examine Cooke or to examine into the matters referred to him; (4) that many of the matters which the master seeks to inquire into and covered by the order of March 1, 1907, are matters which arose since the filing of the bill and the entry of the interlocutory decree,

and that such matters should be alleged in a supplemental bill of complaint, etc.; (5) that the complainant has an adequate remedy at law, and that defendant cannot be charged with treble damages; (6) that the bill of complaint does not cover the matters sought to be inquired into, especially those occurring since the entry of the interlocutory decree; (7) that the master having passed upon the credibility of Mr. Cooke, defendant herein, he was disqualified to further hear and pass upon the matters referred back to him; (8) that the defendant Cooke was subpœnaed before the master in the hearing on the reference as to profits and damages, and gave his testimony under protest; that much of it was immaterial to the matter then under investigation, and will now be invoked against him, and that as it was not then competent against him it is not now competent against him, and he is entitled to have his liability determined in a common-law action before a jury, and that he cannot thus be compelled to testify against himself as to the existence and thereby made to incur a penal liability.

The special master overruled all the objections, and Mr. Cooke gave his evidence under protest.

Much evidence was adduced, and May 26, 1908, the special master made a report embracing findings as to many matters occurring subsequently to the filing of the bill, and in which he reiterates his inability to give credit to Cooke's testimony, who was a witness before him on the second hearing, and finds that Cooke was an actual participant in the infringement by the defendant Empire Electrical Instrument Company, and that judgment should be entered against the defendant Cooke jointly with the Empire Company "for the amount of the judgment to be entered against that company," and that complainant recover its costs on this supplementary proceeding.

The master's report of November 19, 1906, found about $3,000 damages against the Empire Company.

It was not on any theory that an error was committed in finding infringement by the Empire Electrical Instrument Company and by F. A. La Roche Company alone, and in failing to find infringement by the defendant Charles D. Cooke, on the evidence given and submitted at the final hearing, that the order of March 1, 1907, was made. That order was made on the theory that, during the taking of evidence before the special master, in execution of the reference to ascertain the extent of the infringement by those companies and the amount of profits and damages for which they were liable, it was disclosed, mainly from the evidence of Cooke himself, that he was a party to the infringement by those companies, and hence liable with them, and that there should be an interlocutory decree so finding, and referring the question of the extent of his infringement and liability therefor to a special master. But no new interlocutory decree, no amendment to the interlocutory decree already entered, was made or suggested. It was referred back to the master "to take testimony relative to the question whether judgment should be entered in this case against the defendant Charles D. Cooke" as well as the defendant companies found guilty of infringement, and to report on any new testimony and "the other testimony already taken in the case." This, of course, includ-

ed the testimony given on the execution of the reference to ascertain profits and damages. It is clear that this reference back to the master contemplated the taking of testimony on the question of whether or not Cooke had infringed the patent, as he could not be held personally liable unless he had. But this was of little importance, in fact, so far as complainant was concerned, as the court had filed its opinion holding, on the evidence first taken and that taken before the master on the accounting, that Cooke was guilty of "deliberate and intentional" infringement. This was done while Cooke was present in court as a witness merely, if he was present at all. There was nothing for the master to do, except permit Cooke to adduce evidence, if he could, which would exculpate him from the charge of infringement. As the court had pronounced its decision on the evidence, and the master had twice stated in his report already made that Cooke was not entitled to credit as a witness, it can hardly be said that Cooke was to have a hearing on the question of his personal infringement of the patent before an unprejudiced and impartial tribunal. The testimony that had been given by Cooke on the reference before the special master to ascertain the extent of the infringement by the two companies, and the profits and damages the complainant was entitled to recover from them by reason thereof, was a far different question and issue from that whether Cooke had himself infringed the patent. While the parties were still before the court and the suit had not been dismissed as to Cooke, the issue as to his personal infringement and his personal liability had passed from the questions in controversy. He was not present before the master on the first reference as a defendant, defending himself against the charge of infringement of a patent and liable therefor personally, but simply as a witness. He did not have the aid of counsel even. In all probability he would have conducted his case quite differently had he been present on that hearing before the master in the capacity of defendant, defending himself against the charge and claim of personal liability referred to, from what he did appearing simply as a witness in behalf of another party. By the order of March 1, 1907, the testimony of Cooke, given as a witness merely on the question of the extent of the infringement by other parties and the amount of profits and damages for which they were liable by reason thereof, and at a time when he was not defending himself and was not on trial for having infringed the patent, was put in evidence against him as a person then charged with infringement. It was considered and treated as evidence in chief by the special master. He was not given an opportunity to object to it. It cannot be considered by me other than as an admission by Cooke made out of court.

This brings up the question whether it was competent for the court at that stage of the case and without an amendment of the interlocutory decree entered, and, so far as appears, without notice to Cooke, to regard and treat the case and issues formed by the pleadings, so far as Cooke was concerned, opened for a new trial and hearing on newly disclosed evidence, to wit, the admission of Cooke made during the execution of the reference, and such further evidence as might be given in the case. This is what the course taken amounts to. I

am satisfied that Cooke was a party to the suit individually; that it was competent at any time, before final decree, to open the whole case and permit a retrial of the question whether Cooke was guilty of infringement as charged in the bill of complaint, and, if found guilty, to ascertain the extent of the infringement and the extent of his personal liability, either as an individual infringer or jointly with the other defendants. We may, therefore, regard the second reference to the master as a taking of evidence to be submitted to the court and considered by it as on a final hearing of the question whether or not Cooke had, prior to the bringing of this suit, infringed the patent in suit. The court may, therefore, on all the legal and competent testimony, discarding that taken before the master prior to the order of March 1, 1907, except so far as that given by Cooke himself may be used as an admission out of court (for as he was not present or required to be as a defendant on the execution of that reference, and cannot be bound or affected by the testimony of witnesses when he had no opportunity to cross-examine, and the issue of his infringement was not on trial), now decide whether complainant is entitled to a decree that Cooke infringed the patent as charged in the bill of complaint, and the amount of his liability, if the evidence given in the second reference to the master establishes liability.

The testimony taken prior to the entry of the interlocutory decree is, of course, competent against Cooke on the question of his personal infringement of the patent in suit, as is that taken subsequently to March 1, 1907. Cooke was then called into court, and is deemed to have been present as a defendant in the action, charged with personal acts amounting to an infringement of the patent by himself as an individual. The evidence of all the witnesses examined before the master between June 22, 1904, and March 1, 1907, except that of Cooke himself, must be absolutely ignored in determining the question of his personal infringement of the patent and the amount of his liability, if any. None of it, except Cooke's, can be used to establish infringement by him. He was not defending, and he was not called upon to defend at that time. His acts were not in issue. He had no opportunity to cross-examine the witnesses, and was not called upon to do so.

I have examined the record to ascertain whether there is evidence to establish infringement by Cooke within the authorities. There is nothing in his acts or conduct prior to the bringing of the suit that directly charges him individually with infringement of the patent in suit. He nowhere admits infringement or knowledge that the company was infringing. He was president of the Empire Electrical Instrument Company, organized in February, 1899, and which did considerable business during its entire existence. He was connected with and was an officer in several other corporations. He says that in 1899 he gave this company no attention at all, attending but one meeting of the board of directors, and that in 1900 his relations were entirely in his official capacity, attending two meetings, one in January and one in November of that year. During all that time he was superintendent of the Cooke Locomotive Works, in which position he remained until June, 1901. July 12, 1901, he sailed for Europe, and returned in September or October. Before going to Europe he purchased two

patents of Mr. La Roche, and also took sufficient additional stock to make his interest equal with that of La Roche. After the suit was commenced Cooke was more active in the company, but there is absolutely nothing to show that prior thereto Cooke did anything indicating a willful purpose on his part to infringe the patent in suit, except that October 26, 1901, letters were written, signed by Cooke, calling a meeting of interested persons to form a combination to fight the Weston patents. He must at that time have been cognizant of the fact that the company was charged with infringement of the Weston patents. There is no proof that he personally authorized or directed the doing of any infringing act. It does appear that after suit was brought he took an active part in defending it, and sought to defeat the patent and disprove infringement by the company and the other defendants. I am not aware that actively defending a patent suit brought is evidence that the party charged had been guilty of infringement prior thereto.

It does appear that from February 7, 1899, to July, 1901, Cooke held about one-fourth of the stock of the company, and that from that date on he held 97 shares, or three shares less than one-half. La Roche held either an equal, or substantially an equal, amount of the stock. La Roche was acquainted with electrical machinery and supplies; Cooke was not. Cooke was the president of the company, and hence the executive head of the corporation; but he was not its manager, or the actual manager or director, of its business affairs. It cannot be presumed that he was the manager and director of its business affairs from the mere fact he was president, and this is especially true where it is shown that he was not in fact such manager and director. It is not true as a matter of law or of fact that to relieve himself from personal liability for the continuing tortious acts of his company the president "should show affirmatively not only ignorance of, but lack of participation on his part in, the tortious acts," or "such further facts as would fairly justify his failure to possess the information" that the company was committing a tortious act. To charge the president of a corporation personally with liability for its tortious acts, it is not sufficient to show that he was its president, as the master assumes in the face of overwhelming authority to the contrary, but it must be shown affirmatively that he acted beyond the scope of his office. Cazier v. Mackie-Lovejoy Mfg. Co. et al., 138 Fed. 654, 656, 71 C. C. A. 104; Farmers' Mfg. Co. v. Spruks Mfg. Co. et al. (C. C.) 119 Fed. 594, 595; Hutter v. De Q. B. S. Co. et al., 128 Fed. 283, 62 C. C. A. 652; United Nickel Co. et al. v. Worthington et al. (C. C.) 13 Fed. 392, 393; Boston Woven Hose Co. v. Star Rubber Co. (C. C.) 40 Fed. 167; Bowers et al. v. Atlantic G. & P. Co. (C. C.) 104 Fed. 887, 892; Consolidated Fastener Co. v. Columbia Fastener Co. (C. C.) 79 Fed. 795, 801; Howard v. Plow Works (C. C.) 35 Fed. 743, 746, 747; Cleveland Forge & Bolt Co. v. U. S. R. S. Co. (C. C.) 41 Fed. 476, 477; Macaulay v. White S. M. Co. (C. C.) 9 Fed. 698.

In Howard, etc., v. St. Paul Plow Works, supra, the president was made defendant, and the court said:

"The president and directors of the St. Paul Plow Works have been made codefendants with the corporation in this proceeding, and a decree against

them individually is sought by complainants. It is not shown in the evidence that the persons named have, in their individual capacity, manufactured or sold any harrows, or that they have individually derived any profit or advantage therefrom. * * * All the acts charged against them are acts done in carrying on the business of the corporation, for the benefit of the corporation and its stockholders; and under such circumstances no reason is perceived why a decree, either for an accounting or for an injunction, should be rendered against them as individuals."

In Farmers' Mfg. Co. v. Spruks Mfg. Co. (C. C.) 119 Fed. 594, supra, the president was made defendant, and the court said:

"The defendant Geo. T. Leach, president of defendant corporation, answering the bill, denies that he has done or committed any act or thing in respect to the matter recited in the bill or alleged to have infringed any rights of the complainant in his individual capacity, and has not on his individual account made, used, or sold any ventilating barrels, or co-operated with or acted for the said corporation codefendant in making, using, or selling any such barrel, except as an officer of said corporation, and that he is advised that the bill is defective and insufficient for lack of averment in charging him with the commission of any act, matter, or thing in his individual capacity. The objection of this defendant is sustained. As to him and the other defendants in their individual capacity, it is adjudged and decreed that the bill be dismissed. If it was intended in the bill to charge a conspiracy by the individual defendants served, the remedy would be at law, and not in equity. Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556, 27 L. Ed. 322; Bowers v. Atlantic, Gulf & Pac. Co. (C. C.) 104 Fed. 887."

In Cleveland F. & B. Co. v. U. S. R. S. Co., supra, the president was made a defendant, and the court said:

"It has not been the practice of this court to render a personal decree for damages or costs against an officer of a corporation, except in cases where there was such intentional and willful action of the officer, shown from the proofs. as indicated an individual purpose to infringe the patent, and violate the rights of the complainant, and when, as in one case, it was made to appear on hearing that the company was organized for the express purpose of violating the patent."

In Cazier v. Mackie-L. Mfg. Co. et al., supra, the court held:

"Infringement by a corporation gives no right of action against one of its officers individually, unless he has acted beyond the ordinary scope of his office."

The court, per Baker, C. J., said:

"The appellee company, a corporation, can act only through its officers and agents. We find nothing in the record to show that the appellee Deknatel acted beyond the ordinary scope of his office. No cause of action against him is made out."

In Hutter v. De Q. B. S. Co., supra, the Circuit Court of Appeals, Second Circuit, per Coxe, C. J., held:

"The joinder with a corporation of one of its officers as defendant in a suit for infringement, where there is no proof that he had any part personally in the infringement, is not justified, and warrants the imposition of costs on the complainant."

The court said:

"Francis II. Ruhe, who is alleged in the bill to be secretary, treasurer, and one of the directors of the defendant company, is made a party defendant. There is not the slightest proof to establish infringement by him as an individual, and no sufficient reason is shown for making him a defendant.

An injunction against the corporation restrains all its officers, agents, and servants, and there is little justification for making these persons defendants except in rare instances, where it is shown that they have infringed the patent as individuals or have personally directed infringement. The courts of this circuit have frequently had occasion to criticise this practice, and have, in some instances, imposed costs upon the complainant as a penalty for thus subjecting innocent parties to the expense and annoyance of defending themselves against an unwarrantable accusation."

In United Nickel Co. v. Worthington et al. (C. C.) 13 Fed. 392, the court held:

"The only persons who can be held for damages for the infringement of a patent are those who own or have some interest in the business of making, using, or selling the thing which is an infringement; and an action at law cannot be maintained against the directors, shareholders, or workmen of a corporation which infringes a patented improvement."

In his opinion Judge Lowell said:

"It would be a great hardship if the directors of a railway or manufacturing corporation were bound, at their personal peril, to find out that every machine which the company uses is free of all claim of monopoly. * * *

"I am of opinion that the only persons who can be held for damages are those who should have taken a license, and that they are those who own or have some interest in the business of making, using, or selling the thing which is an infringement; and that an action at law cannot be maintained against the directors, shareholders, or workmen of a corporation which infringes a patented improvement."

In the other cases cited, the same doctrine was declared. In Macaulay v. White Sewing M. Co., supra, there was an injunction, and the president of the company ordered acts which constituted an infringement and consequently a violation of the injunction, but it was held that he was not personally liable, as he did not intend to have the injunction violated.

In Smith v. Laundry Machinery Co. (C. C.) 19 Fed. 826, the president of the company was made defendant, and answered personally. It was charged that he personally, as well as the company, with full knowledge of the patent, etc., had made and sold machines embodying the patented invention. It appeared that he owned all the capital stock of the corporation, and that he used the corporation solely for himself so as to appear as an officer of it, and that all its property was in fact his. The court, Wheeler, D. J., held that as the president of the company held all the stock and all the property; that as president, and therefore agent, of the company he was agent for himself, and that all he did and all he received he did and received for himself; that Lewis, the president, and he alone, had all the profits of the infringement, and was liable to the complainant therefor. I do not think the soundness of this decision can be questioned. But such is not this case. Here Cooke owned less than one-half the stock, and there were at least three other stockholders. Cooke was agent for all, not himself alone. Cooke did not hold or own all the property, or receive all the profits of the infringement.

The signing of the letter referred to was an act as president, and within his duty as such. It was not an individual act, and did not make him individually liable. Van Weel v. Winston, 115 U. S. 228, 241, 242, 6 Sup. Ct. 22, 29 L. Ed. 384. It is misfeasance, not mere

nonfeasance, as the special master held, that makes the president or other officers of a corporation liable for its torts. Van Antwerp v. Linton, 89 Hun, 417, 35 N. Y. Supp. 318, affirmed 157 N. Y. 716, 53 N. E. 1133. And in this case it was held that liability could not be predicated on the fact that the defendants were officers, directors, or stockholders in the corporation.

"The president of a private corporation is, as the term implies, the presiding officer of its board of directors and of its shareholders when convened in general meeting. The office itself, however, confers no power to bind the corporation or control its property. The president's power as an agent must be found in the organic law of the corporation, in delegation of authority from it, directly or through its board of directors, formally expressed or implied from a habit or custom of doing business. On the one hand, in a corporation in which business transactions are few and carried on entirely by its board of trustees, the president exercises the functions of a presiding officer merely; unaccustomed to act for the corporation, he has no power as an agent not specially conferred. On the other hand, in a large business corporation, where its board of directors meets at long intervals and the management of its ordinary business is left entirely in the hands of its president, he is invested with large authority as its representative." 10 Cyc. 903, and cases there cited.

His liability for torts is for those committed by himself, acts of misfeasance, "an affirmative act wrongfully ordered or done or caused to be done by him." 10 Cyc. 920; 10 Cyc. 841, and cases cited.

There is no proof or pretense of proof in this case that Cooke ever personally ordered, procured, or directed the installation or use of the infringing devices. There is no proof or pretense of proof that he understood their nature or character, or that he had knowledge of the patent infringed, or its scope, or the rights conferred on others by it. There is no proof that Cooke controlled this company for his own personal advantage, except as he was interested as a stockholder. There is no proof that the other officers and stockholders were practical nonentities, or that Cooke held any power of attorney to act for all, or that he assumed any such power. That he was consulted at times as to the business is undoubtedly true, but we may not infer from the facts that he was president and owned practically half the stock that he knew of or sanctioned the infringement. There is no proof that this business was conducted as a practical partnership. There is no proof the corporation was insolvent at the time of the infringement.

But it is undoubtedly true that the officers and stockholders of a corporation, or the owners of interests in a partnership, may become and be held liable for the debts, including damages awarded against the company, for its torts and wrongs. Long after the interlocutory decree was entered, and during the execution of the reference to the master, this company went out of existence, and it is found its property was disposed of and the proceeds divided between Cooke and La Roche. This property was and still is liable to be appropriated to the payment of the amount awarded against the company in and by the final decree, if disposed of to cheat or defraud creditors or this complainant, or not in payment of the just debts of the company, as it was a trust fund for their payment and may be followed as such.

But I know of no principle of law or equity that will permit a court to hold an officer or stockholder liable as a contributory infringer of a patent for the reason he is guilty, after the infringement was completed and suit brought, of having aided to dispose of the property of the infringing company in which he was a large stockholder. To hold him responsible for that act and compel restitution is one thing, but to hold him responsible as a contributory infringer for such an act is not warranted by any statute or rule of law or equity of which I am made aware. Saxlehner v. Eisner, 147 Fed. 189, 190. 191, 77 C. C. A. 417, is not authority for any such proposition. In that case, Saxlehner brought suit in equity against the Eisner & Mendelson Company for the fraudulent appropriation of the complainant's bottle and label without justification or excuse, and after long litigation resulted in a final decree against the corporation for the sum of about $30,000. This decree had not been satisfied. The defendants in the second suit to which attention is about to be called, who were the executive officers of the corporation mentioned, were not made defendants in the first-mentioned suit, nor were they brought in and made parties defendant. Pending the accounting in the first suit mentioned, the complainant discovered evidence that such executive officers had individually infringed complainant's rights, and thereupon a second suit was brought against them charging them with individual liability as contributory or joint infringers with the company. At the circuit it was held that the second action could be maintained, and it was also held that the evidence showed individual acts committed by the defendants sufficient to show that they had violated the rights of the complainant as individuals, and such defendants were held personally liable for the same amount already found against the corporation as profits. In affirming the court below, the Circuit Court of Appeals in a clear and concise opinion delivered by Judge Lacombe, stated that the court had held that the executive officers of a corporation may be held liable for the infringement of a patent where they have infringed as individuals, or have personally directed infringement. That learned judge then stated the second ground of appeal to be "that these defendants merely acted as executive officers of the company, without any such personal initiative as would make them participants in the infringement." The judge thereupon said:

"In our opinion, the evidence shows the contrary. They were not only executive officers, but also held, each of them, a full power of attorney authorizing them to act in all matters pertaining to the company. The directors were practically nonentities. Whatever business was to be done, and whatever transaction was to be had, rested entirely and solely with these two individuals, who acted on their own initiative and do not seem to have reported to the directors what they did in carrying on the business. No one can read the testimony of the defendants, including that taken in the suit against the corporation (which was put in evidence here), without being convinced that they were practically the corporation, managing it and controlling its affairs as if it were a partnership, with themselves sole partners; that the scheme of pirating complainant's label originated with them, was worked out and carried into effect by their personal exertions; and that in reality the corporation was but the cover for their individual enterprises. Under such circumstances there might be a failure of justice

if the plaintiff, who has seen his trade-marks boldly appropriated for many years, should be denied any relief against the individuals through whose pernicious activity alone he has been made to suffer the consequent loss."

The case was an action against individuals in their individual capacity for infringement of complainant's trade-mark. It was for a tort committed by them, and for which a separate action could be maintained. The facts stated and found by the court made a clear case of personal liability. It is not enough to show that the executive officers owned nearly all the stock, and that they had the power to control the affairs of the company. It must appear that such officers either originated the scheme of infringement, or that it was worked out and carried into effect by them personally and for their individual purposes. It would not do to hold that the defendant, who owns a majority of the stock of a corporation and is also president thereof, and who consequently might and probably did control the corporation, is therefore personally liable for the tort committed by such company. Saxlehner v. Eisner, supra, as well as the numerous cases cited, demonstrates that the proof must go beyond this and establish active participation by the defendants sought to be personally charged in the infringing acts. This the proof in the case now before the court fails to establish. Such active participation in the infringement of the patent cannot be inferred from the fact that the defendant, president of the company, after suit brought defended the company as well as himself and that he contributed to the defense of the suit. As already stated, it is not evidence of guilt to defend one's self when charged with a tort in an action at law or in a suit in equity. If a suit brought is unduly prolonged or vexatiously litigated by the defendant for purposes of delay while the infringing acts continue, these matters may be considered in determining the question of single or treble damages, but they are not infringing acts, nor do they establish the commission of infringing acts prior to suit brought. Such conduct may also be considered on the question of the credibility of the witness.

On a review of all the evidence I fail to find sufficient to show that the defendant Cooke was personally a participant in the infringement charged, and the second report of the master is therefore disapproved and not confirmed, except in so far as it finds and awards profits and damages against the Empire Electrical Instrument Company and the F. A. La Roche Company. In that respect the first report of the master is approved and confirmed, and there will be a final decree for the complainant against said defendants accordingly, and for treble damages, in accordance with the opinion of Judge Holt given on the evidence taken on the accounting, with costs.

As the evidence now shows, it cannot be doubted that, if the decree against these companies is not satisfied, in a proper suit for the purpose against Cooke and La Roche they may be compelled to account for and pay over the proceeds or value of the property of such companies which has come into their hands or which has been diverted by them. But such a suit must be on proper allegations and for that purpose. Jackson v. Ludeling, 21 Wall. 616, 631, 22 L. Ed.

492; Noyes on Incorporate Relations (2d Ed.) § 123; Cole v. Millerton Iron Co., 133 N. Y. 168, 30 N. E. 847, 28 Am. St. Rep. 615. In Noyes on Incorporate Relations, supra, the learned author says:

"A corporation in selling its entire property, with the approval of all or a majority of its stockholders, as the occasion may require, is governed by the same general principles of law applicable to natural persons. It cannot transfer its proper. in fraud of its creditors. It may not so dispose of all its assets as to leave nothing for its creditors, and if it attempts such transfer the creditors may follow the property. * * *

"The doctrine that the property of a corporation is a trust fund for the payment of its debts does not prevent its transfer in good faith for a valuable consideration. As said by Mr. Justice Field in Fogg v. Blair, 133 U. S. 534, 10 Sup. Ct. 338, 33 L. Ed. 721: 'That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion can be distributed by the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to bona fide purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness.' "